IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| GROCERY MANUFACTURERS ASSOCIATION, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 5:14-cv-00117-CR |
| WILLIAM H. SORRELL, in his official capacity as the Attorney General of Vermont, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

PLAINTIFFS' RESPONSE TO THE MOTION TO INTERVENE BY THE
VERMONT PUBLIC INTEREST RESEARCH GROUP AND CENTER FOR FOOD SAFETY

Plaintiffs Grocery Manufacturers Association, Snack Food Association, International Dairy Foods Association, and National Association of Manufacturers (Plaintiffs), by and through counsel, herein respond to the Motion to Intervene filed by the Vermont Public Interest Research Group (VPIRG) and Center for Food Safety (CFS) (together, Applicants).

Plaintiffs consent to Applicants' participation in this case as *amici curiae*—a position that Applicants did not report, *see* Motion at 5. And every interest Applicants identify as supporting intervention would be equally and adequately served by participation as *amici curiae*. As Judge Murtha recognized in a decision involving one of the Applicants (yet not cited by them), advocacy interests are not sufficient grounds for intervention under Rule 24. *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, No. 1:11-cv-99, 2011 WL 2173785, at *3 (D. Vt. June 2, 2011). In that case, he denied VPIRG's motion to intervene—and granted it *amicus* status instead, just as Plaintiffs suggest here. *Id.* at *5. *See also* Charles A. Wright *et al.*, 7C Fed. Prac. & Proc. Civ. § 1913 n.26 (collecting decisions granting *amicus* status in lieu of intervention). Applicants are not entitled to intervene, nor should they be permitted to do so.

Applicants are not entitled to intervene as of right because their interest in vindicating the constitutionality of Act 120 is a generalized interest held by all citizens of Vermont. Applicants have not identified a concrete interest that warrants party status; nor have they shown that the State would not "adequately represent" the interests they proffer. Fed. R. Civ. P. 24(a)(2). If this Court were to declare Act 120 invalid tomorrow, Applicants would be in precisely the same position they are in today, except they might face the additional inconvenience of explaining that ruling to potential supporters. That is not a "direct, substantial, and legally protectable" interest cognizable under Rule 24. *United States v. City of New York*, 198 F.3d 360, 365 (2d Cir. 1999).

In addition, permissive intervention should not be allowed, limited or otherwise,[1] because Applicants have not shown they have "a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). Again, just as in *Entergy*, Applicants' "interests are adequately represented by Vermont," and "affording [Applicants] status as full parties . . . would unduly delay resolution of the case." 2011 WL 2173785, at *5. For this reason too, Applicants' motion should be denied.

<u>ARGUMENT</u>

**I.    APPLICANTS ARE NOT ENTITLED TO INTERVENE AS A MATTER OF RIGHT UNDER RULE 24(a).**

Because Applicants' interests in the constitutionality of Act 120 are not direct, substantial, or legally protectable—and, in any event, are adequately defended by the State— Applicants are not entitled to intervention under Federal Rule of Civil Procedure 24(a).

Rule 24(a) allows "intervention as of right" when a person "(1) is given an unconditional right to intervene by a federal statute," or "(2) claims an interest relating to the property or

---

[1] The "limited permissive intervention" the State proposes is not intervention. *See* ECF No. 21, at 2 (suggesting participation limited to "brief[ing] legal issues raised by the parties"); *with Entergy*, 2011 WL 2173785, at *5 (permissive intervention confers right "to conduct discovery, present oral argument, and question witnesses"). *Amicus* status is what the State is proposing.

transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interests unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a). Applicants seek to intervene under subsection (a)(2). Accordingly, they were required to "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York*, 198 F.3d at 364 (quotation marks omitted). "Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application." *Id.* (quotation marks omitted; emphasis added).

In addition, an applicant under Rule 24(a)(2) must show it is a *necessary* party under Rule 19. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 389 (2d Cir. 2006) ("if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2)"). *See, e.g.*, *McGarry v. Pallito*, No.1:09-cv-128-JGM, 2012 WL 5293345, at *2 (D. Vt. Sept. 19, 2012) (recognizing rule), *report & recommendation adopted*, 2012 WL 5293043 (Oct. 26, 2012). A person is a necessary party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Under subsection (B)(i), it is not enough that the person's interest may be impaired by the outcome of the litigation; the harm must be "*caused by* the nonparty's absence from the litigation." *MasterCard*, 471 F.3d at 388 (emphasis in original).

Here, timeliness is the only Rule 24(a) requirement that Applicants arguably satisfy. Because they do not satisfy the remaining elements, and make no effort to show they are necessary parties under Rule 19, they should not be allowed to intervene as of right.

### A.     Applicants' interest is not direct, substantial, or legally protectable.

Applicants' interest in this case is qualitatively different from the type of interest required for intervention as of right.  "Under Rule 24(a)(2), the proposed intervenor must have a 'direct, substantial, and legally protectable' interest in the subject matter of the action."  *New York*, 198 F.3d at 365 (quoting *Washington Elec. Coop. Inc. v. Massachusetts Mun. Elec. Co*., 922 F.2d 92, 96 (2d Cir. 1990)).  "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule."  *Wash. Elec.*, 922 F.2d at 97.  And the interest may not be abstract.  The applicant must show it "would be substantially affected in a *practical* sense by the determination" made in this action.  Fed. R. Civ. P. 24, Advisory Committee Note (emphasis added).  The requirement is parallel to the injury requirement for standing: "a litigant must seek relief for an injury that affects him in a personal and individual way," meaning "[h]e must possess a 'direct stake' in the outcome of the case."  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (citation omitted).  A general interest in vindicating the constitutionality of a state law does not suffice.  *Id.* at 2662-63 (holding ballot-measure sponsors lacked standing to appeal).

Applicants' asserted interests all boil down to an interest in the constitutionality of a state law for which they previously advocated—precisely the interest rejected in *Hollingsworth*.  To the extent *Hollingsworth* does not itself dispose of the Motion, it nevertheless shows that Applicants would lack standing to appeal an adverse order without the State's participation, *see id.* at 2663—and that fact weighs against allowing them to intervene at the outset.  As another court in this Circuit recently observed, "Rule 24(a)'s 'legally protectable interest' requirement

*compels a court* to consider whether certain proposed intervenors have standing to appeal in the absence of the originally aggrieved party." *Floyd v. City of New York*, No.09-civ-1034-AT, 2014 WL 3765729, at *49 (S.D.N.Y. Jul. 30, 2014) (emphasis added; denying police unions' motion to intervene to defend New York's stop-and-frisk policy). An applicant who lacks standing to "legally protect its interest" on appeal without the participation of the original defendant necessarily lacks a "legally protectable interest" in the litigation. *Id*. Moreover, in such circumstances, "allowing a non-party to intervene [in the trial-court proceedings] would be an exercise in legal futility." *Id.* at *48. That is just the case here. Applicants will not have standing to appeal an adverse order in this case, *Hollingsworth*, 133 S. Ct. at 2663, so allowing them to participate as parties now would be futile. And, because they can fulfill their interests by filing briefs on consent as *amici curiae*, there is no reason for them to have status any more substantial than that. *See, e.g.*, *Allen v. Dairy Farmers of Am., Inc*., No. 5:09-CV-230-CR, 2011 WL 1706778, at *7 (D. Vt. May 4, 2011) (denying motion to intervene where applicants had alternative means of participation in settlement proceedings).

Applicants try without success to portray their interest as something other than merely political. To that end, they claim an interest in this suit because (1) championing food labeling is a core part of their institutional missions, (2) they were involved in the passage of Act 120, and (3) their members "strongly support" the labeling requirement. Applicants' Mem. at 6-7. These are classic *amicus* interests—not interests that make them necessary parties, and not "direct, substantial, legally protectable interest[s]" entitling Applicants to intervene as a matter of right. Each fails to support their Motion.

*First*, Applicants assert that "[t]his case will significantly affect CFS's interests," *id.* at 6, apparently because it could lead to legal precedent that labeling of genetically engineered food is

unconstitutional, *see* Kimbrell Decl. ¶ 18.  That generalized interest is not a "direct" one; if an interest in averting unfavorable constitutional precedent for the sake of nationwide advocacy efforts were enough to justify intervention, Rule 24 would quickly become a nullity in constitutional cases.  Moreover, Rule 24 requires a "legally protectable" interest, and CFS does not have a legally protectable interest in being able to advocate free from precedent it finds inconvenient.  An adverse decision in this District would not impede CFS's ability to advocate, and Applicants do not argue that it would.  A ruling from this Court would not shut down the CFS web site or silence its spokespeople; indeed it would have no effect on CFS's operations at all.  Therefore to the extent an advocacy "mission" even qualifies as "direct, substantial, and legally protectable," and it does not, Applicants fail to show that this interest is implicated here.

     *Second*, Applicants argue they have a right to intervene because they would like to secure a return on their investment in labeling-related advocacy generally, and the passage of Act 120 specifically.  Though Applicants were, without dispute, active in the passage of Act 120, their past advocacy does not give them a protectable interest in this suit.  As *Hollingsworth* makes clear, once legislation is enacted, those who supported its passage "have no 'personal stake' in defending its enforcement that is distinguishable from the general interest of every citizen of [the state.]"  133 S. Ct. at 2663.[2]  *See also Entergy*, 2011 WL 2173785, at *2 (recognizing VPIRG's limited interest post-enactment).

     Imagine, too, what would result if mere advocacy before a legislature sufficed to warrant intervention.  Many individuals and organizations provided submissions and testimony for and

---

[2] *Hollingsworth* casts significant doubt on the earlier decisions on which Applicants chiefly rely. *See* Applicants' Mem. at 6, 7-8 (citing *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*, No. 2:05-cv-302, ECF. No. 46 (D. Vt. May 3, 2006) and cases cited therein).  *See, e.g.*, *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998) (suggesting group may intervene "where the underlying action concerns legislation previously supported by the organization") (quoted in *Green Mountain*, at 9); *but see Hollingsworth*, 133 S. Ct. at 2663 (holding Proposition 8 supporters had no personal stake once measure was enacted).

against Act 120 over two years of hearings.  If Applicants' notion takes hold, the Court will by granting intervention have invited dozens, if not hundreds, of other interested parties to join the fray.  There is no mandate in Rule 24 to reenact the legislative process in the courtroom.

*Third*, Applicants claim that they should be able to intervene because they have members who want food to be labeled in particular ways.  Applicants' Mem. at 7.  These preferences are not "direct, substantial, and legally protectable" interests that stand Applicants in any different stead from the rest of the Vermont populace (excepting, of course, those individuals who respect the safety determinations made by the FDA, the European Commission, and every credible scientific body to have looked at the issues, *see* Compl. ¶¶ 24-27; GMO Answers, http://www.gmoanswers.com).  Critically, Applicants do not suggest that their members are currently unable to use existing certified organic or voluntary "non-GMO" labeling to choose foods that have *not* been genetically engineered if that is their preference, *see* Compl. ¶ 40, and to "vote with [their] dollar[s]" for causes they support, Weinstein Decl. ¶ 7.  The "need to know" what is already known and knowable thus "amounts to only a generic interest shared by the entire [Vermont] citizenry," and "[a]n interest so generalized will not support a claim for intervention as of right," *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007) (quotation marks omitted).

As for the supposed economic benefit to sustainable farmers, that claim of interest does not suffice because such benefits are speculative, untested, and "contingent upon the occurrence of a sequence of events before it becomes colorable." *Wash. Elec. Co-op.*, 922 F.2d at 97. Therefore, it too fails.  *See, e.g.*, *Chevron Corp. v. Donziger*, No. 11-civ-0691-LAK, 2011 WL 2150450, at *4 (S.D.N.Y. May 31, 2011) (denying motion to intervene on count involving

validity of foreign judgment because attorney's only interest was contingent right to potential damages award if judgment were enforced).

In short, Applicants cannot show that they "would be substantially affected in a practical sense by the determination" made in this action.  *See* Fed. R. Civ. P. 24, Advisory Committee Note.  Their organizations are not regulated by the statute; their members' interests are speculative, purely ideological, or indistinguishable from those of the general public; and they have failed to identify any practical harm to a concrete, legally protected interest.  Further, any interest they might assert at this stage could not be pursued on appeal if the State abandons its defense of Act 120.  Accordingly, Applicants have failed to show they may intervene as of right under Fed. R. Civ. P. 24(a)(2).

> **B.**    **Applicants have not rebutted the presumption that Vermont's representation will adequately protect their interests.**

Even if Applicants had demonstrated a sufficient interest, intervention should still be denied because they have not shown that Vermont will not adequately represent them.  In arguing otherwise, Applicants rely on cases describing their burden to demonstrate inadequate representation as "minimal."  *See* Applicants' Mem. at 7.  What Applicants notably fail to mention, however, is that "a more rigorous showing" is required "where the putative intervenor and a named party have the same ultimate objective."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citing *Wash. Elec.*, 922 F.2d at 98; *U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978)).  To overcome the presumption of adequate representation in such circumstances, a proposed intervenor must submit, for example, evidence of "collusion, adversity of interest, nonfeasance, or incompetence."  *Butler*, 250 F.3d at 179-80.  *See also Hooker Chems.*, 749 F.2d at 985 (requiring "strong affirmative showing" of inadequacy where State sues as *parens patriae*); *Natural Res. Def. Council, Inc. v. N.Y. State Dept. of Envtl.*

*Conservation*, 834 F.2d 60, 62 (2d Cir. 1987) (similar, with State as defendant); *Entergy*, 2011 WL 2173785, at *3 (same, denying VPIRG's motion to intervene).

Applicants must bear the burden of making this "rigorous showing," *Butler*, 250 F.3d at 179, because they concede that they share Vermont's "ultimate objective," Applicants' Mem. at 10. Applicants cannot, and do not, point to evidence that carries that burden. From the beginning, the Attorney General has stated that he will "mount a vigorous and zealous defense of the law." Press Release, *Gov. Peter Shumlin Signs First-In-The-Nation Genetically Engineered Foods Labeling Law* (May 8, 2014), *at* http://governor.vermont.gov/newsroom-gmo-bill-signing-release. The Assistant Attorney General overseeing this litigation has likewise told the press that she will "absolutely defend" Act 120. Stephanie Kraft, *Seeds of Rebellion*, Valley Advocate (Jul. 2, 2012), *at* http://www.valleyadvocate.com/article.cfm?aid=17986. On top of that, the State has hired a premier Washington law firm for the case, under a $1.465 million contract. *See State Hires D.C. Firm to Defend GMO Labeling Law*, Vermont Digger (Jul. 7, 2014), *at* http://vtdigger.org/2014/07/07/state-hires-d-c-firm-help-defend-gmo-law.[3] The State's response highlights these very points. *See* ECF No. 21.

Nonetheless, Applicants argue that they should be permitted to file what amounts to a "me too" brief because they purportedly can defend Act 120 better than the State can. Yet they do not suggest that they are uniquely situated to present "colorable legal defenses" that the State will overlook. *See NRDC*, 834 F.2d at 61-62. Rather, they contend the State's representation will be inadequate because (1) the State has limited financial resources and (2) Applicants' interests are broader than the State's because they represent out-of-state members as well. *See* Applicants' Mem. at 7-11. Neither of these arguments is persuasive.

---

[3]  The State's outside counsel worked alongside CFS in representing respondents in the Supreme Court in *Monsanto, Inc. v. Geertson Seed Farms*, 561 U.S. 139 (2010).

Claims about Vermont's limited financial resources for this lawsuit are firmly rebutted by Act 120 itself, as well as experience thus far.  Section 4(b) of the Act creates a "special fund," which may accept private donations—without limitation—from interested individuals and organizations, including Applicants themselves.  The Act also authorizes the fund to hold up to $1.5 million in settlement monies collected over budget, as well as further disbursements from the General Assembly.  Contrary to Applicants' allegations, the fund is not small.  The State's $1.465 million contract with outside counsel suggests that it has allocated at least that much to the law's defense, and the General Assembly remains free to make additional appropriations if the defense so requires.  Further, as of July 28, 2014, the special fund held $160,000 in private donations, including sizeable contributions from nationwide advocacy groups and foundations. John Herrick, *Private Donations Boost GMO Legal Defense Kitty to $160,000*, Vermont Digger (July 28, 2014), *at* http://vtdigger.org/2014/07/28/private-donations-boost-gmo-defense-kitty-160000.  The State continues to actively seek donations through social media.  *See, e.g.*, @foodfightfundvt Twitter Feed.

Applicants' arguments fall well short of showing that Vermont lacks the resources to defend the law.  In order for limited resources to amount to inadequacy of representation, the intervenor must show that the named party has a "proven lack of financial resources to continue litigation." *Butler*, 250 F.3d at 181.  That is a high bar; in *Butler*, the Court concluded it was not met even where the existing party had accepted outside financial and in-kind legal assistance to proceed with the litigation.  *Id.  Compare Teague v. Bakker*, 931 F.2d 259, 262 (4th Cir. 1991) (finding representation inadequate where one defendant had income of 11 cents per hour earned as federal inmate and another had modest means earned as a minister).

Applicants' suggestion that the State will not adequately represent certain of their interests fares no better.  The interests they identify are those of *out-of-state* residents that have no cognizable interest in what Vermont does on behalf of Vermont residents.  Applicants' Mem. at 10.  The interests of non-Vermonters could not support intervention in any event.  As the Second Circuit has held, "[a]n interest that is remote from the subject matter of the proceeding" is not one that is direct, substantial, or legally protectable.  *Wash. Elec. Co-op.*, 922 F.2d at 97.  Whatever interest out-of-state members may have in the viability of the laws of other states, it is certainly "remote from the subject matter" of this proceeding—which is *Vermont* law.  *See id.* The interest therefore is not one that Applicants may point to as being inadequately represented by the State.  *See id.*

The issues involved in this case make it particularly unsuitable for wide-ranging application of Rule 24.  The First Amendment and Commerce Clause issues both turn upon the strength of the *State*'s interest in the law.  Act 120 lists four informational interests:  to enable consumers to make "informed decisions regarding the potential health effects of the food they purchase and consume"; to "[i]nform the purchasing decisions of consumers who are concerned about the potential environmental effects of the production of food from genetic engineering"; to "[r]educe and prevent consumer confusion and deception"; and to "[p]rovide consumers with data from which they may make informed decisions for religious reasons."  9 V.S.A. § 3041.  To the extent Applicants plan to argue those interests, *see* Applicants' Mem. at 7, their interests are the same as those the State has identified.  If the State abandons or disavows one of them in this litigation, it is not for Applicants to prop it back up:  "Intervention cannot be used as a means to inject collateral issues into an existing action."  *Wash. Elec.*, 922 F.2d at 97.

In the end, Applicants' argument amounts to a contention that they will defend Act 120 more aggressively than the State.  *See, e.g.*, Applicants' Mem. at 10 (suggesting settlement "may be more appealing for the State").  That is not enough.  Applicants are not entitled to intervene simply because they "have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy."  *New York*, 198 F.3d at 367.  *See, e.g.*, *Entergy Nuclear Vermont Yankee v. Shumlin*, 2011 WL  1883040 (D. Vt. May 7, 2011) ("NEC's argument that Vermont may be more open to settling the suit and less likely to appeal a decision than NEC is . . . unavailing" under Rule 24); *see also, e.g.*, *Entergy*, 2011 WL 2173785, at *4 (VPIRG's difference views on trial strategy insufficient to justify intervention); *Massachusetts Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 781 (D.C. Cir. 1997) (representation is not "inadequate" just because the proposed intervenor "is unable to free-ride as far as it might wish[.]").  Accordingly, this Court should rule just as Judge Murtha did:  "Even if [Applicants] have an interest in the subject matter of this litigation, their interest is adequately represented by the State of Vermont, which has demonstrated it is vigorously defending its statutory and regulatory scheme and shares both organizations' ultimate objective."  *Entergy*, 2011 WL 2173785, at *4.

### C.   Applicants have not demonstrated they are necessary parties under Rule 19.

Applicants make no effort to show they are necessary parties under Rule 19, as the Second Circuit requires, *see MasterCard*, 471 F.3d at 389.  This is an independent basis for denying their motion, and for all the reasons they fail to satisfy Rule 24's requirements, they also fail Rule 19's requirements.  *See, e.g.*, *Allen*, 2011 WL 1706778, at * 7 (denying motion because applicants could express their concerns through means other than intervention); *United States ex rel. Anti-Discrim. Ctr. of Metro N.Y., Inc. v. Westchester Cnty., N.Y.*, No. 06-cv-2860-DLC, 2012

WL 13777, at *6 (S.D.N.Y. Jan. 4, 2012) (group's "organizational purpose" in combating segregation did not make it a necessary party to consent decree proceedings).

Because they do not satisfy Rule 24(a)(2), which incorporates Rule 19(a), Applicants' Motion for intervention as of right should be denied.

## II.    THE COURT SHOULD NOT GRANT PERMISSIVE INTERVENTION.

Applicants alternatively seek permissive intervention under Rule 24(b)(1)(B).  Their request again falls well short of the mark.

Rule 24(b) authorizes a court to grant permissive intervention in lieu of intervention as of right when a person "(A) is given a conditional right to intervene by a federal statute" or "(B) has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1).  In making this determination, the court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  "Permissive intervention is wholly discretionary," *Brennan*, 579 F.2d at 191, and its denial "has virtually never been reversed," *AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 561 (2d Cir. 2005) (quotation marks omitted).

As an initial matter, Applicants do not have a "claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Indeed, Applicants' moving papers do not even attempt to identify a "claim or defense" that would satisfy this standard; instead, they assert only that they would raise the same *arguments*, and that the "public interest" is a source of commonality between their arguments and the issues in the case.  *See* Applicants' Mem. at 12.  Applicants' political positions, however, are not claims and defenses.

In any event, Applicants' intervention should not be allowed because it would "unduly delay or prejudice" the adjudication of this case, which is the "principal consideration" under Rule 24(b).  *Brennan,* 579 F.2d at 191; *accord Citizens Against Casino Gambling in Erie Cnty.*

*v. Hogen*, 417 F. App'x 49, 51 (2d Cir. 2011) (affirming denial of intervention; noting grant of *amicus* status).  This case is an urgent one.  Compl. ¶ 5.  Plaintiffs have less than two years to achieve compliance with the Act, which for many companies may not be feasible.  *See* Compl. ¶¶ 9-12 (scope of products); ¶¶ 74-76 (compliance steps).  But this litigation is not likely to be resolved by the July 2016 effective date as it is,[4] and granting intervention could generate additional discovery and motion practice that could delay a decision on the merits for months.  The potential for delay weighs against permissive intervention.  *See Sierra Club v. U.S. Army Corps of Eng'rs*, 709 F.2d 175, 177 (2d Cir. 1983) (affirming denial of intervention when "it [wa]s important that the district court proceed expeditiously"); *Battle v. City of New York*, No. 11-civ-3599-RMB, 2012 WL 112242 (S.D.N.Y.  Jan.12, 2012) (denying intervention because "additional parties are often the source of additional discovery, objections, briefs, arguments, and motions.").

Another practical consideration favors denial of the Motion.  Allowing intervention for these Applicants could quickly herald the arrival of many more potential intervenors, causing still more delay and unnecessary complication.  As one district court recognized when denying a similar motion to intervene, granting the motion "would bring forth other proposed intervenors who would assert only generalized political interests," and the participation of such groups "probably would generate more heat than light."  *Brenner v. Scott*, 298 F.R.D. 689, 692 (N.D. Fla. 2014).  It is not difficult to foresee the same here.  *See, e.g.*, *United States v. N.Y. State Bd.*

---

[4] Similar cases have taken more than two years to complete.  *See, e.g.*, *Int'l Dairy Foods Ass'n v. Amestoy*, No. 2:94-cv-119 (filed Apr. 25, 1994; 2d Cir. ruling Aug. 8, 1996); *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, No. 2:99-cv-203 (filed Jul. 19, 1999; 2d Cir. ruling Nov. 6, 2001).  Neither case was tried.  A trial benchmark is *IMS Health, Inc. v. Sorrell*, No. 1:07-cv-188 (filed Aug. 29, 2007; judgment Apr. 24, 2009; 2d Cir. ruling Nov. 23, 2010; Supreme Court ruling June 23, 2011).  *See also* Act 120, § 4(d) (contemplating litigation extending potentially to 2018).

*of Elections*, 312 F. App'x 353, 355 (2d Cir. 2008) (affirming denial of motion for intervention where potential intervention of other affected entities would be "unmanageable").

Finally, permissive intervention is unwarranted here because Applicants can give their arguments full airing by filing papers in this case as *amici curiae.* Courts have routinely resolved motions to intervene in just this way. *See, e.g.*, *Battle*, 2012 WL 112242, at *7 (denying intervention; suggesting *amicus* participation); *Entergy*, 2011 WL 2173785 (denying intervention; granting *amicus* status); *Gulino v. Bd. of Educ.*, No. 96-cv-08414-KMW, 2009 WL 2972997, at *4 (S.D.N.Y. Sep. 17, 2009) (same); *see also, e.g.*, *Brenner*, 298 F.R.D. at 691-92 (granting *amicus* status because of the "meager if not nonexistent benefit that would flow from allowing [the applicant] to intervene").

Plaintiffs have consented in advance to *amicus* participation. Applicants' advocacy interests can be fully served through those means. Therefore, permissive intervention is inappropriate, and it too should be denied.

CONCLUSION

Plaintiffs respectfully submit that Applicants' Motion to Intervene should be denied, or in the alternative, calendared for a hearing so the Court and the parties have further opportunity to assess the nature of Applicants' interest in the case and the scope of their intended participation.

Dated:  August 7, 2014

Respectfully submitted,

Catherine E. Stetson (*admitted pro hac vice*)
E. Desmond Hogan (*admitted pro hac vice*)
Judith E. Coleman (*admitted pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street NW
Washington, DC 20004
Telephone: 202-637-5600
cate.stetson@hoganlovells.com

/s/ Matthew B. Byrne
Matthew B. Byrne
GRAVEL & SHEA, P.C.
76 St. Paul Street #700
Burlington, VT 05401
Telephone: 802-658-0220
mbyrne@gravelshea.com

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I, Matthew B. Byrne, counsel for Plaintiffs, hereby certify that on August 7, 2014, I

electronically followed the foregoing Response by the CM/ECF system, which will send

notification of such filing to all registered participants.  In additional, I served this Response on

counsel for Applicants VPIRG and CFS by causing a copy to be sent by first-class mail to:


      Laura B. Murphy, Esq.
      Environmental & Natural Resources Law Clinic
      Vermont Law School
      P.O. Box 96, 164 Chelsea Street
      South Royalton, VT 05068


Dated:   August 7, 2014        /s/  Matthew B. Byrne
                      Matthew B. Byrne