IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| GROCERY MANUFACTURERS ASSOCIATION, SNACK FOOD ASSOCIATION, INTERNATIONAL DAIRY FOODS ASSOCIATION, and NATIONAL ASSOCIATION OF MANUFACTURERS, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | |
| WILLIAM H. SORRELL, in his official capacity as the Attorney General of Vermont; PETER E. SHUMLIN, in his official capacity as Governor of Vermont; TRACY DOLAN, in her official capacity as Interim Commissioner of the Vermont Department of Health; and JAMES B. REARDON, in his official capacity as Commissioner of the Vermont Department of Finance and Management,[1] | ) ) ) ) ) ) ) ) ) ) ) | Case No. 5:14-cv-117-cr |
| Defendants. | ) ) | |

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

---

[1]      Pursuant to Fed. R. Civ. P. 25(d), Tracy Dolan is substituted for Harry L. Chen as Interim Commissioner of Health, in her official capacity.

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CONTENTS ............................................................................................ i

TABLE OF AUTHORITIES ..................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ............................................................................................................. 4

    I.    THE COMPLAINT STATES CLAIMS THAT ACT 120 VIOLATES THE
        FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, THE
        COMMERCE CLAUSE, AND THE SUPREMACY CLAUSE .................... 4

        A.    Legal Standards ................................................................................ 4

        B.    Act 120's Labeling Requirement Violates the First Amendment ........................ 5

        C.    The Complaint States a Claim That Act 120's Ban on "Natural"
               Claims Violates the First Amendment ................................................ 13

        D.    The Complaint States a Claim That Act 120's Ban on "Words of
               Similar Import" to "Natural" Is Void for Vagueness ........................... 15

        E.    The Complaint States a Claim Under the Commerce Clause ............................ 17

        F.    The Complaint States a Claim That Federal Law Preempts Act 120
               In Its Entirety ................................................................................. 20

    II.  DEFENDANTS' REMAINING CONTENTIONS ARE MERITLESS ........................... 25

CONCLUSION ......................................................................................................... 25

TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Allen v. Dairy Farmers of Am., Inc*,
    748 F. Supp. 2d 323 (D. Vt. 2010)..........................................................................9

*American Booksellers Found. v. Dean*,
    342 F.3d 96 (2d Cir. 2003)...................................................................................17

*American Meat Inst. v. Leeman*,
    180 Cal. App. 4th 728 (4th Dist. 2009).................................................................23

*American Meat Inst. v. USDA*,
    2014 WL 3732697 (D.C. Cir. Jul. 29, 2014) (en banc) ........................................12

*Arizona v. United States*,
    132 S. Ct. 2492 (2012)........................................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................................5-6

*Association of Int'l Auto. Mfrs. v. Abrams*,
    84 F.3d 602 (2d Cir. 1996)........................................................... 18-19, 21

*Brown & Williamson Tobacco Corp. v. Pataki*,
    320 F.3d 200 (2d Cir. 2003)................................................................................17

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008).................................................................................9

*Buffalo Teachers Fed'n v. Tobe*,
    464 F.3d 362 (2d Cir. 2006)................................................................................12

*Citizens United v. FEC*,
    558 U.S. 310 (2010)............................................................................................5

*Connecticut Bar Ass'n v. United States*,
    620 F.3d 81 (2d Cir. 2010)......................................................... 10-11

*CTIA—The Wireless Ass'n v. City & Cnty. of S.F.*,
    827 F. Supp. 2d 1054 (N.D. Cal. 2011), *aff'd* 494 F. App'x 752 (9th Cir. 2012) ....................8

*Dairy Mart Convenience Stores, Inc. v. Nickel*,
    411 F.3d 367 (2d Cir. 2005)................................................................................25

*Doe v. City of Albuquerque*,
    667 F.3d 1111 (10th Cir. 2012) ...........................................................................5

TABLE OF AUTHORITIES—Continued

Page(s)

*Entergy Nuclear Vermont Yankee, LLC v. Shumlin*,
    733 F.3d 393 (2d Cir. 2013)................................................................21

*Evergreen Ass'n, Inc. v. City of N.Y.*,
    740 F.3d 233 (2d Cir. 2014)..............................................................6, 8

*Global Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006)..............................................................4, 9

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005)......................................................... 17-18, 20

*Grocery Mfrs. of Am., Inc. v. Gerace*,
    755 F.2d 993 (2d Cir. 1985)................................................................23

*Ibanez v. Fla. Dep't of Bus. & Prof'l Reg., Bd. of Accountancy*,
    512 U.S. 136 (1994)........................................................................13

*International Dairy Foods Ass'n v. Amestoy*,
    92 F.3d 68 (2d Cir. 1996)........................................................ 12-13, 22

*Jones v. Rath Packing Co*.,
    430 U.S. 519 (1977)........................................................................23

*Kachalsky v. County of Westchester*,
    701 F.3d 81 (2d Cir. 2012)................................................................25

*Milavetz, Gallop, & Milavetz, P.A. v. United States*,
    559 U.S. 229 (2010).................................................................... 10-12

*National Broiler Council v. Voss*,
    44 F.3d 740 (9th Cir. 1994)................................................................23

*National Elec. Mfrs. Ass'n v. Sorrell*,
    272 F.3d 104 (2d Cir. 2001)................................................................10

*New York State Rest. Ass'n v. N.Y.C. Bd. of Health*,
    556 F.3d 114 (2d Cir. 2009)............................................................11, 22

*Peabody v. P.J.'s Auto Vill., Inc.*,
    569 A.2d 460 (Vt. 1989)....................................................................16

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp*.,
    602 F.3d 57 (2d Cir. 2010)...................................................................5

*Pike v. Bruce Church, Inc*,
    397 U.S. 137 (1970)................................................................... 17-19

TABLE OF AUTHORITIES—Continued

Page(s)

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ................................................................................6

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
    487 U.S. 795 (1988) .............................................................................5-6

*Safelite Grp., Inc. v. Jepsen*,
    988 F. Supp. 2d 199 (D. Conn. 2013),*vacated by*
    2014 WL 4358418 (2d Cir. Sept. 4, 2014) ..............................................8

*Sorrell v. IMS Health, Inc.*,
    131 S. Ct. 2653 (2011) ........................................................................6-8

*Town of Southold v. Town of E. Hampton*,
    477 F.3d 38 (2d Cir. 2007) ....................................................................18

*Turner Broad. Sys., Inc. v. FCC*,
    512 U.S. 662 (1996) ................................................................................6

*United Haulers Ass'n v. Oneida-Herkimer*,
    550 U.S. 330 (2007) ..............................................................................20

*U. S. Dep't of Agric. v. Moreno*,
    413 U.S. 528 (1973) ....................................................................10, 12-13

*United States v. Salerno*,
    481 U.S. 739 (1987) ................................................................................5

*Williamson v. Lee Optical of Okla., Inc.*,
    348 U.S. 483 (1955) ..............................................................................12

*Ysursa v. Pocatello Educ. Ass'n*,
    555 U.S. 353 (2009) ..............................................................................10

*Zauderer v. Office of Disciplinary Counsel of the S. Ct. of Ohio*,
    471 U.S. 626 (1985) ..................................................................... *passim*


**FEDERAL STATUTES:**

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq.* ................................................21

    21 U.S.C. § 321 ......................................................................................2

    21 U.S.C. § 341 ....................................................................................21

    21 U.S.C. § 343 ....................................................................... 3, 21-22, 24

TABLE OF AUTHORITIES—Continued

Page(s)

Federal Meat Inspection Act, 21 U.S.C. § 678 ..........................................................................3, 23

Nutrition Labeling and Education Act, 21 U.S.C. § 343-1. ........................................................3, 21

Poultry Products Inspection Act, 21 U.S.C. § 467e............................................................ 3, 22-23

**FEDERAL REGULATION:**

21 C.F.R. § 102.5(a).......................................................................................................................24

**FEDERAL ADMINISTRATIVE MATERIAL:**

FDA, *Statement of Policy: Foods Derived from New Plant Varieties*,
   57 Fed. Reg. 22984 (May 29, 1992) ...................................................................................... 1-2

**FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ....................................................................................4, 9

**STATE STATUTES:**

2014 Vermont Acts and Resolves, No. 120 ("Act 120"),
   *codified at* 9 V.S.A. §§ 3041-3048 .................................................................................. *passim*

   Act 120, § 1 ...........................................................................................................................15

   Act 120, § 3 .............................................................................................................................2

   Act 120, § 7 .............................................................................................................................4

   9 V.S.A. § 3041 .................................................................................................................. 2-3, 7

   9 V.S.A. § 3043 ................................................................................................................. 1-2, 15

   9 V.S.A. § 3044.....................................................................................................................3, 7

   9 V.S.A. ch. 63 .......................................................................................................................14

**OTHER AUTHORITY**

Vermont Office of the Atty. Gen., *GE Food Labeling Rule:*
   *Frequently Asked Questions*, Aug. 4, 2014, *at* http://ago.vermont.gov/hot-topics/ge-
   food-labeling-rule/ge-faq-final.php ...........................................................................................4

<u>PRELIMINARY STATEMENT</u>

Plaintiffs Grocery Manufacturers Association, Snack Food Association, International Dairy Foods Association, and National Association of Manufacturers (Plaintiffs) oppose Defendants' Motion to Dismiss, ECF No. 24.  Plaintiffs have stated claims for relief under the First, Fifth, and Fourteenth Amendments, the Commerce Clause, and the Supremacy Clause that are both plausible and likely to succeed.  *See* Mem. in Support of Plaintiffs' Motion for Prelim. Inj. (Pls.' P.I. Mem.) (filed with this Opposition).  Plaintiffs have moved for leave to file an Amended Complaint addressing various objections raised by Defendants, though none of those objections would actually warrant the relief Defendants seek.

<u>BACKGROUND</u>

Plaintiffs brought this suit on June 12, 2014, to declare invalid and enjoin Act 120, which establishes a stand-alone labeling regime for foods "produced entirely or in part from genetic engineering."  2014 Vermont Acts and Resolves No. 120; 9 V.S.A. § 3043(a) (effective July 1, 2016).  Plaintiffs' Complaint named the Attorney General, the Governor, the Commissioner of Health, and the Commissioner of Finance, all in their official capacities.  *See* Complt. ¶¶ 13-16.

Plaintiffs represent food manufacturers who make products using ingredients derived from corn, soybeans, and sugarbeets, and over 90% of the corn, soybean, and sugarbeet plants grown in the United States are from genetically engineered varieties.  *Id.* ¶¶ 9-12, 21, 22; Pls.' Proposed Am. Complt. ¶ 12.  Plaintiffs' members thus inevitably use ingredients derived from genetically engineered plant varieties.  *Id.*  The vast majority of foods in the grocery store today contain at least one ingredient derived from a genetically engineered plant.  *Id.* ¶ 22.

The fact that a plant was genetically engineered does not mean the food produced from it is different from the food produced from a non-genetically-engineered variety.  Complt. ¶ 24; FDA, *Statement of Policy: Foods Derived from New Plant Varieties*, 57 Fed. Reg. 22984 (May

1

29, 1992) (cited in Complt. ¶ 24) ("1992 Statement").  The crops used in the food supply today were engineered for agronomic properties, such as herbicide and pest resistance.  *Id.*; Complt. ¶¶ 21-22.[2]  Two decades of study and regulatory review have yielded no evidence that these varieties create food that is different in any material way – that is, in terms of health, safety, nutrition, or flavor.  *Id.* ¶¶ 24-27 (and sources cited therein).  *See also* 21 U.S.C. § 321(n) (defining differences that are "material").  The "conflicting studies" that Act 120 identifies as undermining this scientific consensus on safety have been repudiated and dismissed as irrelevant by food regulators and leading world health and scientific organizations.  Complt. ¶ 28.

Act 120 imposes two obligations on manufacturers.  First, the Act requires foods "produced entirely or in part from genetic engineering" to be labeled with scripted statements.  9 V.S.A. § 3043(a),(b).  The Act then prohibits such foods from being labeled "on the package, in signage, or in advertising as 'natural', 'naturally made', 'naturally grown', 'all natural,' or any words of similar import that would have a tendency to mislead a consumer."  *Id.*, § 3043(c).  The Act authorizes the Attorney General to "promulgate by rule requirements for the implementation" of the law.  Act 120, § 3.

The stated purposes of Act 120 are to:

> (1) "Establish a system by which persons may make informed decisions regarding the potential health effects of the food they purchase and consume and by which, if they choose, persons may avoid potential health risks of food produced from genetic engineering";

> (2) "Inform the purchasing decisions of consumers who are concerned about the potential environmental effects of the production of food from genetic engineering";

---

[2]    Some crops in development have been genetically engineered to offer additional nutritional value, and so the foods produced from those crops would be different, in a positive way, with the difference identified on the label.  1992 Statement, at 22991.

(3) "Reduce and prevent consumer confusion and deception by prohibiting the labeling of products produced from genetic engineering as 'natural' and by promoting the disclosure of factual information on food labels to allow consumers to make informed decisions"; and

(4) "Provide consumers with data from which they may make informed decisions for religious reasons." 9 V.S.A. § 3041.

The Act does not assert that the purpose of these regulations is to *promote* public health, or environmental sustainability, or religion. *See id.* Rather, the purpose expressed in the statute, as shown above, is to "inform" *consumers* who believe that those interests are implicated when they consume foods connected in some way, shape, or form to genetically engineered plants.

The Act exempts many categories of food from these informational requirements. *See, e.g.*, 9 V.S.A. § 3044(1) (exempting foods "derived entirely from an animal"), § 3044(3) (foods made with processing aids or enzymes), § 3044(4) (alcohol), § 3044(7) (restaurant food). These exempted foods do not need to be labeled, and they may be designated as "natural," despite the fact that they may implicate one or more of the personal or political beliefs listed above.

Plaintiffs brought this suit to enjoin the Defendants from enforcing Act 120 because it compels speech in violation of the First Amendment (Count I); restricts speech in violation of the First Amendment (Count II); is void for vagueness to the extent of its ban on "words of similar import" to the listed "natural" terms, in violation of the First, Fifth, and Fourteenth Amendments (Count III); violates the Commerce Clause (Count IV); and is expressly preempted and conflict-preempted by the Nutrition Labeling and Education Act (NLEA), 21 U.S.C. § 343-1(a), and the Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 343, as well as the Federal Meat Inspection Act (FMIA), 21 U.S.C. § 678, and the Poultry Products Inspection Act (PPIA), 21 U.S.C. § 467e (Count V).

3

The Act's mandatory labeling requirement and ban on natural claims go into effect July 1, 2016.  Act 120, § 7.  Implementing regulations are not expected until July 2015.  Vt. Office of the Atty. Gen., *GE Food Labeling Rule: Frequently Asked Questions*, Aug. 4, 2014, Vermont.gov.  The July 1, 2016 effective date is difficult if not impossible for Plaintiffs' members to meet.  Complt. ¶ 5.  Accordingly, Plaintiffs identified the need for preliminary injunctive relief in their Prayer for Relief, and they attempted to obtain relief outside of court through in-person and telephonic discussions with the Attorney General's Office.  Those discussions did not yield an agreement, and Plaintiffs have moved for a preliminary injunction in papers also filed this day.

<u>ARGUMENT</u>

Plaintiffs' Opposition proceeds in two parts.  First, Plaintiffs respond to Defendants' motion to dismiss the counts in the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Second, Plaintiffs respond to Defendants' allegations of technical defects in the way Plaintiffs pleaded standing to challenge the natural ban; standing with respect to Plaintiff National Association of Manufacturers (NAM); and the roles played by the Governor, Commissioner of Health, and Commissioner of Finance.  Both sets of arguments are meritless.

I.     **THE COMPLAINT STATES CLAIMS THAT ACT 120 VIOLATES THE FIRST, FIFTH, AND FOURTEENTH AMENDMENTS, THE COMMERCE CLAUSE, AND THE SUPREMACY CLAUSE.**

    **A.     Legal Standards.**

A Rule 12(b)(6) motion is used to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits."  *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (emphasis omitted).  The motion must be denied if the factual allegations in the complaint, taken to be true, "plausibly give rise to an entitlement to relief."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678-79 (2009).  Review of a Rule 12(b)(6) motion "does not involve consideration of whether a plaintiff will ultimately prevail on the merits, but instead solely whether the claimant is entitled to offer evidence in support of his claims."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010).

Plaintiffs do not face special pleading burdens because they challenge Act 120 on its face, as Defendants suggest.  *See* Defs.' Mem. 8.  The distinction between facial and as-applied challenges "goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint."  *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).  *See also Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) ("no set of circumstances," as used in *United States v. Salerno*, 481 U.S. 739 (1987), "describ[es] the *result* of a facial challenge") (emphasis in original); *id.* at 1124 (citing cases).  In any event, Plaintiffs have alleged facts sufficient to show that Act 120 must be invalidated *in toto*.

### B.    Act 120's Labeling Requirement Violates the First Amendment.

Compelled disclosures implicate the speaker's First Amendment freedom of expression and are subject to judicial scrutiny.  *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988); *Zauderer v. Office of Disciplinary Counsel.* 471 U.S. 626, 651 (1985).  Defendants do not dispute that Act 120 burdens Plaintiffs' First Amendment rights.  Nor do they dispute that Act 120 lacks the justification required to withstand heightened scrutiny.  Defs.' Mem. 9-16.  And because Fifth Amendment rational-basis review does not apply to Act 120 – or to any measure burdening *First Amendment* rights – Defendants' motion to dismiss Plaintiffs' First Amendment challenge to the labeling requirement fails.

1.     **The Complaint States a Claim That Act 120's Labeling Requirement Is Subject to Heightened Scrutiny, and Defendants Do Not Dispute That Act 120 Fails Under Heightened Scrutiny.**

Defendants do not dispute that heightened scrutiny would be the end of Act 120. Plaintiffs have stated a claim that heightened scrutiny applies to Act 120 because they have pleaded allegations sufficient to show that Act 120 discriminates by content, speaker, and viewpoint. *See Sorrell v. IMS Health*, 131 S. Ct. 2653, 2663 (2011).

To start with first principles:  Heightened scrutiny applies to content-based regulations of speech. *Id.* at 2657.  Laws that compel speech alter the content of speech and thus are "content-based" regulations. *Riley*, 487 U.S. at 795.  Act 120 compels speech, and so Defendants cannot (and do not) dispute that Act 120 is a content-based regulation. *See* Defs.' Mem. 11.  Instead, Defendants suggest that the Supreme Court's decision in *IMS Health* is "inapposite" because it addressed a speech restriction rather than a speech mandate. *Id.*  But *IMS Health* did not purport to limit its reasoning to speech restrictions, and *Riley* conclusively establishes that compelled-speech regulations are content-based regulations, 487 U.S. at 795.  The Supreme Court has reaffirmed that conclusion. *See, e.g.*, *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 642 (1994).  So has the Second Circuit. *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 244-45 (2d Cir. 2014) (regulation requiring pregnancy counseling centers to make certain disclosures to clients was content-based, warranting heightened scrutiny).

The most stringent form of heightened scrutiny – strict scrutiny – applies to a content-based regulation of speech that burdens content according to viewpoint, whether directly or "in its practical operation." *IMS Health*, 131 S. Ct. at 2663 (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992)).  Plaintiffs have pleaded allegations sufficient to state a claim that Act 120 discriminates by viewpoint.  They allege that FDA, USDA, the National Academy of Sciences, and "a global scientific consensus" agree that foods derived from genetically engineered plants

6

are safe.  Complt. ¶¶ 23-27.  Plaintiffs further allege that the "occasional[ ]" studies that have been published against that consensus have been rejected as "unreliable, irrelevant or both."  *Id.*, ¶ 28.  At this early stage, the court must accept those allegations as true.

Nor is Act 120 based on a *governmental* objection to genetic engineering, or the use of genetically engineered plants in food; it is instead "premised on a legislative finding that *some consumers* want to avoid food derived from genetic engineering because *they* distrust the FDA's findings or otherwise object to the use or prevalence of biotechnology in agriculture," *id.*, ¶ 4 (emphases added).  The Act thus caters to the personal views held by private individuals.  *See* 9 V.S.A. § 3041 (asserting purposes relating to consumers' personal beliefs).  Accordingly, Plaintiffs contend, "[i]n adopting Act 120, the State acted as a pass-through for advocates of controversial views," Complt. ¶ 47, and Plaintiffs "fundamentally disagree" with labels designed to validate those views, *id.* at 1.  That is viewpoint discrimination: a State cannot burden speech "to tilt public debate in a preferred direction," *IMS Health*, 132 S. Ct. at 2671.

The Complaint also states a claim that Act 120 discriminates by viewpoint "in its practical operation," *Id.* at 2663.  Plaintiffs allege that Act 120 requires "disclosure of the presence of GE ingredients but does not require disclosure of their absence," Complt. ¶ 44, a choice that places First Amendment burdens on only certain participants in the market.  Plaintiffs further allege that "many firms and individuals selling products . . . are statutorily exempt, despite the presence of ingredients derived from GE plants in their products."  Complt. ¶ 44. Indeed, Act 120 exempts those who certify that they did not make "knowing or intentional" use of ingredients derived from genetically engineered plants, notwithstanding the potential or even likely presence of that plant material in their products.  9 V.S.A. § 3044(2), (6).  This and other exemptions are in conflict with the State's asserted interest in providing consumers with

information that some consumers believe is important for health reasons, or for expressing their environmental or religious positions against genetic engineering as a technology. Plaintiffs have thus stated a claim that the Act's exemptions for favored speakers amount to viewpoint discrimination in their practical operation. *See IMS Health*, 131 S. Ct. at 2663 (Vermont's exemption for those promoting generic drugs constituted viewpoint discrimination).

Defendants' counter-arguments about heightened scrutiny do not provide grounds for dismissal. First, relying on a vacated district court opinion, Defendants contend that heightened scrutiny is inapplicable because the Act's required labels convey "a *fact*." Defs.' Mem. 11 (citing *Safelite Grp., Inc. v. Jepsen*, 988 F. Supp. 2d 199 (D. Conn. 2013), *vacated*, 2014 WL 4358418 (2d Cir. Sept. 4, 2014) (law compelling company to give customers the name of a competing provider failed heightened scrutiny)). But *Evergreen* refuted Defendants' point even before *Safelite*: there, the court held that compelling a counseling center to announce that it does not offer referrals for abortions – a fact – was a matter of "political speech," "made in the context of a public debate about the morality and efficacy of contraception and abortion." 740 F.3d at 249. *See also id.* at 245 n.6 (disclosure was controversial because it "require[d] centers to mention controversial services"). *See also, e.g.*, *CTIA—The Wireless Ass'n v. City & Cnty. of S.F.*, 494 F. App'x 752 (9th Cir. 2012) (disclosures about cell phone radiation not "purely factual and uncontroversial" given "debate" in the scientific community). Plaintiffs intend to present evidence about the controversial "context of [the] public debate" around Act 120, *Evergreen*, 740 F.3d at 749.

Defendants also try their hand at revisionist history, arguing that Act 120 "was enacted to address *the State's* specific concerns about GE foods," rather than the personal views of the State's residents. Defs.' Mem. 16 (emphasis in original). Defendants claim there is support for

their proposition in the Act's legislative record. *Id.* But that is exactly why this argument does not support a motion to dismiss, in which Plaintiffs' account is assumed to be correct.[3] Further, Defendants do not dispute that the Act's stated statutory purposes speak strictly in terms of facilitating consumer choice; there is no articulated State interest in consumers' *making* one choice instead of the other. Act 120 thus amounts to viewpoint discrimination because it legitimates particular individual viewpoints without committing "*the State*" to any one of them – something that would require the State to prove up its evidentiary bona fides, which it plainly is not eager to do.

> ### 2. The Complaint States a Claim That Act 120 Also Fails Under the Test Applied in *Zauderer*, Which Demands a "Substantial" Governmental Interest.

Defendants argue that Act 120 is subject to more lenient review under the Supreme Court's decision in *Zauderer v. Office of Disciplinary Counsel* and the Second Circuit's decisions applying that standard. Defs.' Mem. 9-10. But they characterize the *Zauderer* test incorrectly and (again) resort to revisionist history to evade Plaintiffs' plausible allegation that there was no real "state" interest supporting Act 120. Defs.' Mem. 14. Plaintiffs have stated a claim that Act 120 fails under *either* the actual *Zauderer* test *or* the bare Fifth Amendment standard Defendants would have the Court apply.

---

[3]  Under Rule 12(b)(6), the Court may consider documents, such as the statements by FDA, that are "integral" to the Complaint. *Boykin v. KeyCorp*, 521 F.3d 202, 204 (2d Cir. 2008). Defendants' legislative materials, by contrast, are offered to show the truth of disputed facts. *Global Network*, 458 F.3d at 156 (district court "committed reversible error" by dismissing complaint based on defense materials offered to controvert plaintiff's allegations); *Allen v. Dairy Farmers of Am., Inc.*, 748 F. Supp. 2d 323, 339 n.6 (D. Vt. 2010). The Court may take judicial notice only of "a fact that is not subject to reasonable dispute," Fed. R. Evid. 201, and these facts plainly are disputed. Even the General Assembly admitted as much in its findings. And the Complaint expressly asserts that the General Assembly's findings are false. At the motion to dismiss phase, the Court must accept Plaintiffs' allegations as true.

### a.     *Zauderer* Retains The Substantial-Interest Requirement And Its Burden of Proof.

Defendants argue that Act 120's required disclosures are subject to the pure form of rational-basis review, which demands that the regulation be "rationally related to a legitimate governmental interest."  *U. S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 533 (1973).  That is not correct.  Pure rational-basis review of this form is a standard used exclusively in the Fifth Amendment context; it does not apply to laws that burden First Amendment rights.  *See, e.g.*, *Ysursa v. Pocatello Educ. Ass'n*, 555 U.S. 353, 359 (2009) (applying rational-basis review "[g]iven that the State has not infringed the [challengers'] First Amendment rights").

Defendants' claim to bare-bones rational-basis review is premised on the Supreme Court's statement in *Zauderer* that "an advertiser's [First Amendment] rights are protected so long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers." 471 U.S. at 651; *see also National Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 115 (2d Cir. 2001) (*NEMA*) (describing *Zauderer* as espousing "reasonable relationship" review).  Subsequently, in 2010, the Supreme Court described the *Zauderer* standard as "less exacting scrutiny."  *Milavetz, Galop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010).  The Court did not articulate what "less exacting scrutiny" entails, except to repeat *Zauderer*'s formulation that the disclosure may be upheld if it is "reasonably related to the State's interest in preventing deception."  *Id.* at 250.  The Supreme Court has never equated "less exacting scrutiny" with rational-basis review.  *Id.*

Defendants, however, have done just that.  Their mistake appears to flow from two Second Circuit decisions (one pre-dating *Milavetz* and the other directly controlled by it) that errantly called the applicable standard "rational basis review."  *See Connecticut Bar Ass'n v. United States*, 620 F.3d 81 (2d Cir. 2010); *New York State Rest. Ass'n v. N.Y.C. Bd. of Health*,

556 F.3d 114 (2d Cir. 2009) (*NYSRA*).  In those two cases, however, and in *NEMA*, which

applied a "reasonable relationship" standard, 272 F.3d at 115, the state interest was "substantial,"

just as ordinarily required to satisfy First Amendment scrutiny, *IMS Health*, 131 S. Ct. at 2667:

- *NEMA* upheld Vermont's statute requiring electrical manufacturers to make disclosures relating to the proper disposal of their products to avoid mercury contamination.  272 F.3d at 115.  There was no dispute that the State had a substantial interest in ensuring mercury did not escape into the environment, *see* 72 F. Supp. 2d 449, 451 (D. Vt. 1999), and the Second Circuit recognized the interest as such, 272 F.3d at 115 n.6 (noting state's "substantial interest in protecting human health and the environment").  The only question before the court was whether the disclosures sufficiently *advanced* that interest.  *Id.* ("the issue we face here" is "the proper relationship between a disclosure regulation's means and its ends").

- *NYSRA* upheld regulations requiring fast-food restaurants to post calorie information on their menus.  556 F.3d 114.  The plaintiff conceded that the City had a "substantial interest" in preventing obesity.  *Id.* at 134.  The court thus examined only whether the calorie-count information was reasonably related to that interest.  *Id.* at 134.

- *Connecticut Bar Association* upheld the same disclosure provisions upheld in *Milavetz*, for so-called "debt-relief" providers, as applied to attorneys.  620 F.3d 81.  The court held that *Milavetz* "compelled" it to review the disclosures under "the rational basis test stated in *Zauderer*," because "each of [those] provisions [wa]s directed at misleading commercial speech."  620 F.3d at 95-96.  There, the court was referring not to Fifth Amendment rational-basis review, but to the test "*stated in*" the *Zauderer* and *Milavetz* decisions, pertaining to disclosures to prevent deception.  *Id.* at 95.  *See also, e.g.*, *id.* at 92 (rational basis review, "as specified in *Zauderer*"); *id.* at 92 n.14 (describing how "the Supreme Court explained in *Zauderer*" what was required "to pass the rational basis test").  The court recognized the government's articulated interest in preventing deception,[4] recognized that as a "significant interest," and held the case was controlled directly by *Zauderer* and *Milavetz* in any event.

In short, the Second Circuit has never relieved the government of its obligation to point to an

interest that is "substantial."  And the D.C. Circuit has been similarly conservative, for example

in *American Meat Institute v. USDA*, where it characterized *Zauderer* as a form of heightened

---

[4]     Defendants claim that mandatory labeling can be justified as a measure to "lessen" what they call consumer "confusion," Defs.' Mem. 6, but they do not contend that the anti-confusion interest here is a substantial one.  Nor can they, because Act 120 readily tolerates the alleged "confusion" across a great many products, without justification.  *See supra* at 3.

scrutiny in which the government's burden of proof on the advancement and fit elements has been reduced.  2014 WL 3732697, at *8 (D.C. Cir. Jul. 29, 2014) (en banc).  The court found the government's interest in that case to be substantial and so it "[did] not decide whether a lesser interest could suffice under *Zauderer*."  *Id*. at *4.

To the extent *Zauderer* can still be said to apply outside the context of deception after *Milavetz*, the interpretation of that case which retains the "substantial interest" requirement is the correct one.  Because Defendants do not dispute that the State's interests here fail to rise to the level of "substantial interests," Plaintiffs have stated a claim that Act 120 is invalid under *Zauderer* – as well as under the heightened scrutiny that actually applies.

**b.    Act 120 Fails Even Pure Rational Basis Review.**

Plaintiffs have also stated a claim that Act 120 would not withstand review under the pure form of rational-basis review because it is not rationally related to a "legitimate governmental purpose."  *Moreno*, 413 U.S. at 540.  "A legitimate public purpose is one 'aimed at remedying an important general social or economic problem rather than providing a benefit to special interests.' " *Buffalo Teachers Fed'n v. Tobe*, 464 F.3d 362, 368 (2d Cir. 2006).  The purpose of Act 120 is just the opposite.

Consumer informational interests are not *governmental* interests until some distinct interest *of the government* is implicated.  A governmental interest is one that involves the prevention of a particular harm.  *See Williamson* v. *Lee Optical of Okla., Inc.,* 348 U.S. 483, 488 (1955) ("It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it.").  Act 120 is not directed to a harm.  Its only purpose is to sate (or feed) consumer speculation with incomplete and misleading information.  This was the crux of the Second Circuit's decision invalidating the rBST disclosure requirement in *International Dairy Foods Association v. Amestoy*, 92 F.3d 68 (2d Cir. 1996).  In

12

*Amestoy*, as here, the State did not take a position on whether rBST actually did cause harm; the State was doing nothing more than responding to "mere consumer concern" and "curiosity." *Id.* at 73-74 & n.1.  And in *Amestoy*, as here, the alleged "curiosity" was fueled by vocal constituencies who asserted speculative health concerns and overall "philosophical opposition" to genetic engineering.  *See* Br. of Defendants-Appellees, *Amestoy*, No. 95-7819, at 13 (2d Cir. Oct. 19, 1995).  The General Assembly was acting as a "pass-through" then, as it is now, for the strongly held beliefs of vocal opponents of genetic engineering.  Complt. ¶ 47.

Plaintiffs' pass-through argument states a claim under rational-basis review.  In *USDA v. Moreno*, the Supreme Court held that a "bare [legislative] desire to harm a politically unpopular group cannot constitute a legitimate governmental interest," 413 U.S. at 534.  Plaintiffs are entitled to submit evidence to prove that animus against Plaintiffs and their members – a politically popular viewpoint – was a primary motivating factor for Act 120.

Plaintiffs have stated a claim that Act 120's labeling requirement fails rational-basis review, *Zauderer*'s brand of First Amendment review, intermediate heightened scrutiny, and strict scrutiny.  Defendants' Motion to Dismiss Count I of the Complaint should be denied.

## C.   The Complaint States a Claim That Act 120's Ban on "Natural" Claims Violates the First Amendment.

Under the First Amendment, a State "may not completely ban potentially misleading commercial speech if narrower limitations can ensure that the information is presented in a nonmisleading manner."  *Ibanez v. Fla. Dep't of Bus. & Prof'l Reg., Bd. of Accountancy*, 512 U.S. 136, 152 (1994).  Act 120 "completely ban[s]" the terms natural, all natural, and naturally made, as well as "words of similar import that would have a tendency to mislead a consumer," on the ground that those terms are potentially misleading, and that ban extends to "labeling, signage, and advertising," without limitation.  Even assuming (for the sake of the argument) that

a reasonable consumer could be misled by the raft of commonly used advertising terms listed in this prohibition – something for which the State has offered no supporting evidence – there is no denying that Act 120 categorically bans speech, and that the State currently has a narrower limitation in place: its own Consumer Fraud Act, 9 V.S.A. ch. 63.  Nor does it appear that the State considered that natural claims may be presented with context supplying the basis for the claim, thereby curing the speculative risk of confusion.  Plaintiffs thus have stated a claim that the ban violates the First Amendment.

Apparently aware that this ban cannot meet the demands of First Amendment scrutiny, Defendants argue that Plaintiffs have not sufficiently alleged their standing to bring the claim, and that the "natural" claims involved are not entitled to First Amendment protection because they are "inherently misleading."  Defs.' Mem. 18.  Both arguments are meritless.

First, Plaintiffs have sufficiently alleged standing to bring a First Amendment challenge to the natural ban.  The Complaint explicitly alleges that Act 120 "prohibit[s] manufacturers from describing their products in terms of their choosing," Complt. ¶ 6, and that it "directly punishes and indirectly chills truthful . . . speech," *id.*, ¶ 63.  The Court can draw the reasonable, commonsense inference from these allegations (and the numerous lawsuits against Plaintiffs' members cited in Defendants' memorandum) that Plaintiffs currently use and intend to continue using "natural" claims and words that an ambitious lawyer somewhere could characterize as being "of similar import" to natural.  *E.g.*, Defs.' Mem. 17 n.11.  To the extent Defendants maintain there should be magic words alleging an intent to use "natural" claims in the future, Plaintiffs have amended their Complaint to provide it.  *See* Am. Complt. ¶ 59.

Plaintiffs have also alleged that "natural" claims are not "inherently misleading" and so are protected by the First Amendment.  Complt. ¶¶ 57-60.  As Plaintiffs explained, Defendants'

suggestion that natural claims are inherently misleading "is belied by the fact that the Act exempts numerous foods containing ingredients derived from GE crops from this restriction." *Id.*, ¶ 60.  The Act offers no justification whatsoever for doing so, and neither do Defendants.

Further, there is no evidence cited in the findings in support of this ambitious statement. All Act 120 says on the matter is that "natural" claims "conflict[] with the general perception that 'natural' foods are not genetically engineered."  Act 120, § 1(5)(C).  Defendants, for their part, make the rather incredible claim that the filing of class-action lawsuits in other U.S. jurisdictions is indicative of "inherent" deception.  Defs.' Mem. 17 n.11.  Then, they mix together various definitions of "genetic engineering," and compare them to the definitions of "natural" from (of all places) Black's Law Dictionary, and the Merriam-Webster Online Dictionary, in the hope that the end result will show that natural claims "inevitably will be misleading" to consumers.  Defs.' Mem. 18-19.  Yet, Defendants fail to cite to any instance where consumers were even found to be misled by natural claims – let alone misled as a matter of law.

If the State wants to make its case that there is a "general perception" about "natural foods" and that a label in conflict with that perception is "inherently" misleading, the State may do so – but not in a Motion to Dismiss.  For the Court's purposes, all that matters is that Defendants have not disputed that the Complaint states a claim that the "natural" ban fails intermediate scrutiny.  Their Motion to Dismiss Count II of the Complaint should be denied.

**D.     The Complaint States a Claim That Act 120's Ban on "Words of Similar Import" to "Natural" Is Void for Vagueness.**

Plaintiffs' third count alleges that the natural ban is unconstitutionally vague with respect to "words of similar import that would have a tendency to mislead a consumer."  9 V.S.A. § 3043(c).  Plaintiffs alleged that this catch-all provision "does not give food manufacturers reasonable notice of the advertising and labeling claims that are prohibited," that it "will

15

necessarily chill speech protected by the First Amendment," and that it "opens the door to arbitrary enforcement."  Complt. ¶¶ 66-67.  These allegations state a claim that the prohibition is void for vagueness.

Defendants disagree – but that is about the extent of their argument.  They charge that Plaintiffs' claims are "conclusory," without identifying any factual allegation that is missing, Defs.' Mem. at 21.  They postulate that words with "a tendency to mislead a consumer" are "by definition" misleading, *id.*at 20, when the legal "definition" is in fact far narrower.  *See Peabody v. P.J.'s Auto Vill., Inc.*, 569 A.2d 460, 462 (Vt. 1989) ("deceptive act" must have "misleading effects that are material" to "a consumer acting reasonably").  And Defendants contend it is "clear" that the statute prohibits "variations on the word 'natural' that suggest to a consumer that a GE product was naturally made," *id.* at 21, when that interpretation is circular, has its own vagueness problems (What about "nature"?), and ignores the General Assembly's choice of the term "similar *import*," which connotes similar "*significance*"—not similar spelling.

Finally, Defendants suggest Plaintiffs' vagueness claim is "premature" because it "asks the Court for adjudication before the Attorney General has had a chance to clarify the statute through rulemaking."  Defs.' Mem. 21.  Here, they announce for the first time that the Attorney General's rules will "spell out the meaning of 'words' of similar import' and guide Act 120's application to Plaintiffs' advertising."  *Id.* at 21-22.

This is a nice gesture, to be sure, but far short of what is required to obtain dismissal of the count.  Plaintiffs bring a vagueness challenge to a law that chills speech across all forms of communications media, and gives a right of action and remedies to private plaintiffs, not just the State.  The Attorney General does not say what his rules will propose, or when he will propose them.  Plaintiffs should not be penalized for his delay.

16

**E.      The Complaint States a Claim Under the Commerce Clause.**

Vermont's law violates the Commerce Clause because "the burden [it] impose[s] on [interstate] commerce is clearly excessive in relation to the putative local benefits," *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), and it has the practical effect of regulating commerce occurring wholly outside state borders. *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005).

As an initial matter, Plaintiffs have stated a claim that the natural ban's regulation of national media is a *per se* violation of the Commerce Clause. *See* Compl. ¶ 75. *See Am. Booksellers Found. v. Dean*, 342 F.3d 96, 104 (2d Cir. 2003) (invalidating Vermont law regulating communications over the Internet because "the [I]nternet's geographic reach . . . makes state regulation impracticable"). Plaintiffs should be allowed to proceed with this claim.

Plaintiffs have also alleged facts sufficient to state a claim that Act 120's regulation of food labeling violates the Commerce Clause. A state statute burdens interstate commerce if it "(i) shifts the costs of regulation onto other states, permitting in-state lawmakers to avoid the costs of their political decisions;" (ii) "has the practical effect of requiring out-of-state commerce to be conducted at the regulating state's direction, or (iii) alters the interstate flow of goods in question, as distinct from the impact on companies trading in those goods." *Id.* at 102 (quoting *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 208-09 (2d Cir. 2003)). The Complaint alleges that Act 120 does all three of these things.

First, Plaintiffs have alleged that "Act 120 imposes monumental costs that fall on out-of-state entities and employees who have no political representation in the State." Compl. ¶ 77. Plaintiffs allege that there are "no major food manufacturers based in Vermont," and that the State's own favored industries are exempted without justification. *Id.*, ¶ 73. Next, Plaintiffs alleged that Act 120 "alters and impedes the flow of interstate commerce in food," noting that it

requires "Vermont-specific distribution channels where those channels do not currently exist." *Id.*, ¶¶ 74.  And because establishing those channels "may be impossible" before the effective date, manufacturers may "have to revise their labeling on a regional or even nationwide basis, no matter where in the country [their] products may be sold."  *Id.*  Act 120 thus "has the effect of regulating products, conduct, and commerce occurring outside Vermont's borders."  *Id.*, ¶ 77. Defendants' motion to dismiss these fact-intensive claims is premature.  *See Grand River*, 425 F.3d at 173 (reversing dismissal where Plaintiff alleged facts regarding "practical effect" in other jurisdictions); *see also Town of Southold v. Town of E. Hampton*, 477 F.3d 38 (2d Cir. 2007) (vacating judgment in light of "triable issues of fact" on *Pike* balancing elements).  And they cannot seriously contend that the limitation to food sold at "retail" in Vermont cures the problem. Defs.' Mem. 26 n.19.  The Act imposes liability on the (out-of-state) manufacturer, while making the (in-state) retailer immune from suit, unless it has made the product.

Defendants stake their argument for dismissal on the analysis in *NEMA*.  But *NEMA* was decided at the preliminary-injunction stage, where the court assessed the plaintiff's likelihood of success on the merits on the basis of the record available at that point.  272 F.3d at 107.  And Plaintiffs have alleged facts showing their *Pike* claim to be far more plausible than the one in *NEMA*:  In that case the state's substantial interest in protecting health and the environment was undisputed, *id.* at 115, whereas here Plaintiffs contest that there is *any* governmental interest served by Act 120 at all, let alone an interest that is substantial.  Complt. ¶¶ 53-54.  The burden in *NEMA* may not have sufficed to offset the benefits in that case, but Plaintiffs allege that the burdens on manufacturers in this case outweigh Act 120's non-existent benefits.

The better precedent for this case, then, is *Association of International Automobile Manufacturers v. Abrams*, 84 F.3d 602 (2d Cir. 1996) ("*AIA*"), where the court vacated a grant of

summary judgment to the government in a Commerce Clause challenge to a New York car-labeling law requiring manufacturers "to affix to each new passenger vehicle a label stating the maximum speed at which the vehicle's bumpers suffer only minimal damage upon impact." *Id.* at 604. Though the law was justified in terms of providing informational benefits to consumers, the Second Circuit held there were triable issues of fact as to the extent of those benefits, in light of the repeated rejection of such disclosure requirements by the National Highway & Transportation Safety Administration (NHTSA), who deemed the information to be "of little, if any, value." *Id.* at 613. The court also held there were triable issues of fact relating to the burdens, based on declarations from manufacturers attesting to "hundreds of thousands of dollars" in compliance costs. *Id.* Thus, the court held that *Pike* balancing test could not be adjudicated on summary judgment – as a matter of law – because there were "genuine factual issues as to both the claimed burdens and the putative benefits created by the [statute]." *Id.* These are the very issues Plaintiffs seek to resolve through this lawsuit.

Finally, regarding the allegation that there are no large manufacturers in Vermont, Defendants ask, "so what?" Defs.' Mem. 27 n.20. Here is the "what": "[t]he current supply of non-GE ingredients could not meet the need of *any* major food manufacturer in the United States." Complt. ¶ 76 (emphasis added). This means large manufacturers – all outside Vermont – have no choice but to consider *labeling* (as opposed to reformulation) for at least some if not all of their products. If they relabel for Vermont only, the burdens clearly outweigh the benefits; if the only solution is to relabel nationally, Vermont has just projected its legislation into other states.[5] Either way, Plaintiffs have stated a Commerce Clause violation.

---

[5] The Amended Complaint further alleges that Act 120 is inconsistent with the regimes in other states and the non-identical legislation pending in more than two dozen other states. Am.

Small Vermont manufacturers, on the other hand, may have more modest ingredient demands that could potentially be met before Act 120's effective date.  And so *those* manufacturers can avoid the burdens of establishing different labeling and distribution schemes for Vermont.  This dynamic makes this case distinguishable from *NEMA*, which rejected the Commerce Clause claim there because "lamp producers both inside and outside Vermont would face the *same putative need* to develop separate production and distribution systems to accommodate simultaneously the Vermont market and other state markets."  272 F.3d at 111.

This is not a case where "the most palpable harm imposed by [the law] . . . is likely to fall upon the very people who voted for the laws."  *United Haulers Ass'n v. Oneida-Herkimer*, 550 U.S. 330, 345 (2007) (internal quotation marks and citation omitted).  *Id.*  Virtually all of Plaintiffs' member companies are based outside Vermont, and their many thousands of employees generally live (and vote) in other states.  Plaintiffs should be allowed to bring their Commerce Clause claim based on their theory of *per se* invalid extraterritorial regulation.

## F.   The Complaint States a Claim That Federal Law Preempts Act 120 In Its Entirety.

Plaintiffs' Complaint concludes by alleging that a number of federal statutes, separately and together, preempt Vermont's attempt to regulate food sold in interstate commerce.[6] Defendants do not dispute that Plaintiffs have alleged sufficient factual allegations; their only dispute is that Plaintiffs' claims fail as a matter of law.  They are wrong.

---

Complt. ¶ 78.  This is not hypothetical.  There are ballot measures set for the November election in Oregon and Colorado, neither of which is identical to the other, or to Act 120.  *Id.*  Plaintiffs are entitled to present facts showing that this patchwork of labeling requirements threatens to disrupt interstate commerce.  *See Grand River*, 425 F.3d at 173 (reversing dismissal of claim premised on multi-state regulatory patchwork).

[6] Plaintiffs' Amended Complaint (at ¶ 85) specifies that their conflict preemption theory rests in part on the implementation of these statutes through the *Coordinated Framework*.

1.   **The Complaint States a Claim That Act 120's Labeling Requirement Is Expressly Preempted Under the NLEA.**

A provision of the Nutrition Labeling and Education Act (NLEA), codified at 21 U.S.C. § 343-1(a), expressly preempts state-law requirements that are "not identical to" the federal requirements promulgated under particular sections of the Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. §§ 301 *et seq.*  Specifically, the NLEA preempts state-law requirements relating to the disclosure of ingredients under § 343(i)(2).  It preempts state-law requirements relating to the "common or usual name" that must be appear on the product's label for all foods, under § 343(i)(1).  And it preempts state-law requirements relating to the naming of foods subject to federal standards of identity under § 341 and § 343(g).  Plaintiffs have alleged facts sufficient to show that Act 120's mandate is preempted with respect to each requirement. [7]

*First*, Act 120 "requires the disclosure of the presence of GE ingredients."  Complt. ¶ 44. Federal law does not require such a disclosure.  *Id.* ¶ 82. Thus, Act 120 is a state law requirement for ingredient disclosure "not identical" to the requirements in federal law.  Act 120's proviso that it does not require the label to disclose *which* ingredient triggers the disclosure is of no moment, for a court assessing a preemption claim looks to the effect and operation of the statute, not simply how it was worded by the legislature.  *Entergy Nuclear Vermont Yankee, LLC v. Shumlin*, 733 F.3d 393, 416 (2d Cir. 2013).  Plaintiffs should therefore be allowed to proceed with their claim that the actual effect of the labeling requirement is to disclose ingredients.  *See AIA*, 84 F.3d at 611.

*Second*, Act 120 requires the identity of a product to be qualified as "produced with genetic engineering," "partially produced with genetic engineering," or "may be produced with

---

[7] Plaintiff GMA has submitted a petition to FDA seeking rulemaking on "natural" claims. Accordingly, Plaintiffs intend to amend the complaint when FDA responds, and they are not currently pursuing a claim that the FFDCA and NLEA preempt the ban on "natural" claims.

genetic engineering."  The Act thus endorses the premise that foods derived from genetically engineered plants differ in some uniform and meaningful way from identical foods, derived from other plants.  As Plaintiffs explained in their complaint, FDA takes the opposite view, concluding that there is no basis for mandatory labeling because there is "no basis for distinguishing foods derived from GE plants from identical foods derived from non-GE plants." Complt. ¶ 25.  FDA has specifically characterized this determination as implicating its requirements for the naming of products with their "common or usual name" under § 343(i)(1), *see, e.g.*, 1992 Statement, 57 Fed. Reg. at 22991, and that interpretation is entitled to deference, *NYSRA*, 556 F.3d at 126.  Therefore, Act 120 prescribes a naming requirement that is not identical to federal food naming requirements for foods in general and foods subject to standards of identity in particular.  Plaintiffs have stated a claim that the NLEA expressly preempts Act 120 in this regard as well.

Defendants close this section of their Memorandum with the startling claim that the statements compelled by Act 120 are "warning[s]."  Defs' Mem. 41.  But Defendants cannot have it both ways.  They cannot characterize Act 120's labels as merely conveying "a *fact*," for the purpose of evading heightened scrutiny, Defs.' Mem. 11, then turn around and characterize the labels as conveying a "warning" for purposes of evading *Amestoy* and federal preemption, *id* at 16, 41.  Though these inconsistencies are reason enough to deny their motion, the bottom line is Plaintiffs stated a claim that federal requirements preempt Act 120's labeling mandate.

### 2.     The FMIA and PPIA Expressly Preempt Act 120 as to Covered Products.

The Federal Meat Inspection Act (FMIA) and the Poultry Products Inspection Act (PPIA) also expressly preempt Act 120.  If a meat or poultry product is made at a processing facility inspected by USDA's Food Safety and Inspection Service (FSIS), USDA has the sole authority to dictate the mandatory content of that product's labeling.  21 U.S.C. § 678 (FMIA); § 467e

(PPIA).  *See Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977).  These statutes prohibit state-law "[m]arking, labeling, packaging, or ingredient requirements in addition to, or different than, those' mandated by federal law."  *Grocery Mfrs. of Am., Inc. v. Gerace*, 755 F.2d 993, 997 (2d Cir. 1985) (quoting 21 U.S.C. § 678).  USDA requirements under these statutes do not mandate the disclosure of ingredients derived from genetically engineered plants, and they permit the term "natural."  Complt. ¶ 84.

Defendants do not dispute that the FMIA and PPIA have this express preemptive scope.  Nor do they dispute that many products produced at FSIS-inspected facilities contain ingredients other than those "consisting entirely of" or "derived entirely from" an animal.  (Plaintiffs have included this allegation in their Amended Complaint though it is not necessary for them to do so.)  Accordingly Plaintiffs have stated a claim for a declaration that the FMIA and PPIA expressly preempt Act 120 as applied to products produced at FSIS-inspected facilities.

Defendants' two retorts to this fall flat.  First, as noted above, the "facial challenge" distinction goes to the relief the court grants, and not the plaintiff's pleading burden.  *Supra* at 5.  Defendants also suggest that any as-applied challenge would be "premature" because the Attorney General's rules "may well alter the applicability of Act 120's requirements to particular products."  Defs.' Mem 43 n. 33.  But the FMIA and PPIA unquestionably oust state labeling requirements from federally inspected facilities, so the Attorney General's rules are irrelevant, whatever they "may well" turn out to be.  It is not premature to ask for a declaration to this effect.  *See, e.g., National Broiler Council v. Voss*, 44 F.3d 740, 747 (9th Cir. 1994) (PPIA preempted state law prohibiting the word "fresh" on labels for poultry chilled below 26 degrees where federal law set floor at 24 degrees); *American Meat Inst. v. Leeman*, 180 Cal. App. 4th 728 (4th Dist. 2009) (FMIA preempted state point-of-sale warnings for meat products).

23

### 3. Act 120 is Conflict Preempted.

A statute is preempted by "conflict" with federal law if it is impossible to comply with federal and state-law requirements or the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona v. United States,* 132 S. Ct. 2492, 2501 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 (1941)). Plaintiffs have alleged facts sufficient to demonstrate at least two conflicts with federal law. First, the FFDCA prohibits the use of false and misleading labeling, 21 U.S.C. § 343(a), and Plaintiffs allege that Act 120 conveys an opinion about their products that is false and misleading. Complt. ¶¶ 23, 43, 46-47. If Defendants wish to argue that the Act 120 labels are "warning" labels, Defs.' Mem. 41, then Plaintiffs' conflict-preemption claim grows stronger still: FDA and USDA have both said a "warning" is wholly unjustified. Complt. ¶¶ 24-27.

Second, federal requirements promulgated under the FFDCA require a manufacturer to use a name for a product that is "uniform among all identical or similar products." 21 C.F.R § 102.5(a). As noted above, Act 120's labels effectively change the name of the product so that it is *not* "uniform among all identical or similar products." Third, Plaintiffs have alleged facts sufficient to show that Act 120's labeling requirement stands as an obstacle to the Congress's purposes and objectives in (1) establishing nationally uniform food and ingredient labeling requirements, and (2) granting statutory authority to FDA, USDA, and other agencies to monitor the safety of plants and plant-based products based on sound science. Plaintiffs allege that Act 120 conflicts with that policy, and that it "alters and impedes the flow of interstate commerce in food," in which "the public has a strong interest." Complt. ¶ 77.

Defendants' Motion to Dismiss Count V of the Complaint should be denied.

## II.      DEFENDANTS' REMAINING CONTENTIONS ARE MERITLESS.

Defendants' arguments relating to the identification of the parties in this suit are

meritless, minor, and curable in any event.  First, Defendants argue that NAM lacks standing.  *Id.*

Plaintiffs have amended their complaint (at ¶ 12) to address this issue, though it is unnecessary

for the court to reach it.  *See Kachalsky v. County of Westchester*, 701 F.3d 81, 84 n.2 (2d Cir.

2012) (when "one plaintiff has standing," the court's "jurisdiction is secure and [it] can

adjudicate the case whether the additional plaintiff has standing or not").

Defendants also appear to seek dismissal of three of them, citing inapposite precedent

from other circuits. Plaintiffs have alleged each has "some connection" to implementing Act 120,

which is all the *Second* Circuit requires.  *See Dairy Mart Convenience Stores, Inc. v. Nickel*, 411

F.3d 367, 372 (2d Cir. 2005).  In any event, Plaintiffs have amended their Complaint to further

articulate the "connection[s]" of the contested Defendants.  Am. Complt. ¶¶ 13-16.

CONCLUSION

For all of the foregoing reasons, Defendants' Motion to Dismiss should be denied.


DATE: September 11, 2014                     Respectfully submitted,

                                             ___/s/  Catherine E. Stetson_____
Matthew B. Byrne                             Catherine E. Stetson (*admitted pro hac vice*)
GRAVEL & SHEA, P.C.                          Judith E. Coleman (*admitted pro hac vice*)
76 St. Paul Street #700                      HOGAN LOVELLS US LLP
Burlington, VT 05401                         555 Thirteenth Street NW
Telephone: 802-658-0220                      Washington, DC 20004
mbyrne@gravelshea.com                        Telephone: 202-637-5600
                                             cate.stetson@hoganlovells.com

                                             *Counsel for Plaintiffs*

CERTIFICATE OF SERVICE

I, Catherine E. Stetson, counsel for Plaintiffs, hereby certify that on September 11, 2014, I electronically followed the foregoing Document by the CM/ECF system, which will send notification of such filing to all registered participants.


Dated:  September 11, 2014                    /s/  Catherine E. Stetson
                                              Catherine E. Stetson