UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2014 OCT -7  PM 5: 03

CLERK

BY _____
DEPUTY CLERK

GROCERY MANUFACTURERS                 )
ASSOCIATION, SNACK FOOD               )
ASSOCIATION, INTERNATIONAL            )
DAIRY FOODS ASSOCIATION, AND          )
NATIONAL ASSOCIATION OF               )
MANUFACTURERS,                        )
                                      )
        Plaintiffs,                   )
                                      )
        v.                            )        Case No. 5:14-cv-117
                                      )
WILLIAM H. SORRELL,                   )
PETER E. SHUMLIN,                     )
TRACY DOLAN, AND                      )
JAMES B. REARDON,                     )
                                      )
        Defendants.                   )

## OPINION AND ORDER DENYING VERMONT PUBLIC INTEREST RESEARCH GROUP'S AND CENTER FOR FOOD SAFETY'S MOTION TO INTERVENE AS DEFENDANTS
(Doc. 18)

Pending before the court is a motion to intervene filed by the Vermont Public Interest Research Group ("VPIRG") and the Center for Food Safety ("CFS") (collectively, the "Organizations"). (Doc. 18.) Both Organizations advocated for the passage of 2014 Vt. Acts & Resolves No. 120 ("Act 120"), a Vermont statute that requires manufacturers and retailers to identify whether raw and processed food sold in Vermont was produced in whole or in part through genetic engineering ("GE"). Plaintiffs Grocery Manufacturers Association, Snack Food Association, International Dairy Foods Association, and National Association of Manufacturers (collectively, "Plaintiffs") challenge the constitutionality of Act 120 on several grounds.

Pursuant to Fed. R. Civ. P. 24, the Organizations seek to intervene as a matter of right or, in the alternative, seek permissive intervention because they advocated for the

passage of Act 120 and because if Act 120 is held unconstitutional it will injure their organizational missions, their advocacy efforts, and the personal interests of their members. The Organizations seek to join in the defense of Act 120 with the existing Defendants Governor Peter E. Shumlin, Attorney General William H. Sorrell, Interim Commissioner of the Vermont Department of Health Tracy Dolan, and Commissioner of the Vermont Department of Finance and Management James B. Reardon (the "State Defendants").

Plaintiffs oppose the motion to intervene, however, they consent to the Organizations' participation in this lawsuit as *amici curiae*.

The State Defendants do not oppose the Organizations' motion to intervene as defendants, but affirm that they are ready, willing, and able to fully defend Act 120. They also consent to the Organization's participation in this suit as *amici curiae*.

Plaintiffs are represented by Judith E. Coleman, Esq., E. Desmond Hogan, Esq., Catherine E. Stetson, Esq., and Matthew B. Byrne, Esq. Defendants are represented by Megan J. Shafritz, Esq., Kyle H. Landis-Marinello, Esq., Naomi Sheffield, Esq., Kate T. Gallagher, Esq., and Jon T. Alexander, Esq., of the Vermont Office of the Attorney General, as well as Alan D. Strasser, Esq., Daniel N. Lerman, Esq., Lawrence S. Robbins, Esq., and Lee Turner Friedman, Esq. VPIRG is represented by Laura B. Murphy, Esq. CFS is represented by Aurora L. Paulsen, Esq., and George A. Kimbrell, Esq.

I.    **Factual Background.**

   A.    **The Organizations.**

VPIRG is a tax-exempt, nonprofit membership organization incorporated in Vermont since 1972. It has engaged in public policy debates in Vermont regarding the environment, health care, consumer protection, and democracy for the past forty years. VPIRG currently has approximately 30,000 members and is Vermont's largest environmental and consumer advocacy organization. VPIRG maintains that its "efforts to make Vermont the first state in the nation to require GE labeling are a direct extension of [its] longstanding commitment to increasing transparency in the marketplace and to ensuring a safe and healthy environment for Vermont residents." (Doc. 18-2 at 4.)

In order to advocate in favor of the passage of Act 120, VPIRG retained the
Environmental and Natural Resources Law Clinic of Vermont Law School (the
"ENRLC") for advice and assistance, which included the preparation of a memorandum
on the legality of the proposed bill. They also worked together to compile information
that addressed:

> the potential health risks of GE foods, consumer confusion resulting from
> the lack of GE labels, religious concerns with consuming GE foods, the
> environmental harms associated with GE food production, the misleading
> nature of using the term "natural" on GE foods, and the current state of the
> United States Food and Drug Administration's approach to GE foods.

(Doc. 18-4 at 2-3.) VPIRG provided these materials to state legislators and helped
coordinate and present witness testimony before various House and Senate committees.
VPIRG also participated in the founding of a grassroots advocacy coalition, the Vermont
Right to Know GMOs Coalition (the "Coalition"). VPIRG and the Coalition sought to
encourage public support for Act 120 through public hearings, social media, their
websites, action alerts, and door-to-door canvassing. As a result, VPIRG maintains a
decision holding Act 120 unconstitutional would undermine its advocacy efforts, as well
as the advocacy efforts of its members, and will negate the alleged benefits of Act 120.

CFS is a tax-exempt, nonprofit organization with more than 500,000 consumer
and farmer members across the county and "thousands" of members in Vermont. (Doc.
18-5 at 1.) Started in 1997 as a consumer and environmental organization, CFS
represents that its goals include protection of the public's right to know and protection of
the public health and the environment from alleged harms associated with industrial
agriculture. CFS also represents that it has worked at the "forefront" of the issue of GE
labeling for nearly two decades by using a "multi-faceted" approach of legal, political,
and grassroots strategies, such as public and policymaker education, outreach, and
campaigning. *Id.* at 2. CFS tracks proposed legislation, provides oral and written
testimony to state legislative committees and state legislatures, provides legal and policy
analysis and expertise, and encourages member support and participation in its advocacy
work. In Vermont, CFS worked closely with VPIRG to support the passage of Act 120,

including through the submission of written testimony to legislative committees and issuing public statements and blog posts.

Because CFS has "championed the GE labeling issue across the country since the organization's inception" and because it "vigorously supported the passage of Act 120," CFS contends that it would be "severely and particularly" injured if Act 120 were held unconstitutional. *Id.* at 7. CFS further contends that "an adverse decision for Vermont would potentially damage CFS's efforts to protect the public's right to know in other states and nationally." *Id.* CFS submits that its members have "direct and specific interests in protecting Act 120 from this industry attack," *id.* at 8, because the Food and Drug Administration conducts no independent testing of GE crops, but instead relies on industry data. As a result, CFS argues that its consumer and farmer members will be adversely affected by any "revocation" of Act 120 because Act 120 favors non-GE foods and food production. CFS notes that the rights of its members in Maine and Connecticut will likewise be adversely affected by "revocation" of Vermont's Act 120 because the GE labeling laws in those states have "trigger clauses," which render them effective only if, *inter alia*, four additional states adopt similar labeling laws. *See* 2014 Me. Laws ch. 436 (HP 490) (LD 718); 2013 Conn. Pub. Acts No. 13-183 (to be codified at Conn. Gen. Stat. § 21a-92).

### B.    Act 120.

Act 120 was signed on May 8, 2014 and requires that "food offered for sale by a retailer after July 1, 2016 shall be labeled as produced entirely or in part from genetic engineering if it is a product: (1) offered for retail sale in Vermont; and (2) entirely or partially produced with genetic engineering." 2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3043(a). The labeling requirements apply to raw agricultural commodities and processed food. Act 120 prohibits the manufacturer of a "food produced entirely or in part from genetic engineering" from labeling that "product on the package, in signage, or in advertising as 'natural,' 'naturally made,' 'naturally grown,' 'all natural,' or any words of similar import that would have a tendency to mislead a consumer." 2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3043(c).

4

The Vermont General Assembly based Act 120's labeling requirements on the following findings: "[f]ederal law does not provide for the labeling of food that is produced with genetic engineering"; "[f]ederal law does not require independent testing of the safety of food produced with genetic engineering"; "[g]enetically engineered foods are increasingly available for human consumption"; "[g]enetically engineered foods potentially pose risks to health, safety, agriculture, and the environment"; and "[f]or multiple health, personal, religious, and environmental reasons, the State of Vermont finds that food produced from genetic engineering should be labeled as such." 2014 Vt. Acts & Resolves No. 120, Sec. 1(1)-(5).  The Vermont General Assembly further determined that a mandatory GE labeling requirement would "serve the interests of the State," including "to prevent inadvertent consumer deception, prevent potential risks to human health, protect religious practices, and protect the environment." 2014 Vt. Acts & Resolves No. 120, Sec. 1(6).

Act 120 lists the following objectives: (1) "Establish a system by which persons may make informed decisions regarding the potential health effects of the food they purchase and consume and by which, if they choose, persons may avoid potential health risks of food produced from genetic engineering"; (2) "Inform the purchasing decisions of consumers who are concerned about the potential environmental effects of the production of food from genetic engineering"; (3) "Reduce and prevent consumer confusion and deception by prohibiting the labeling of products produced from genetic engineering as 'natural' and by promoting the disclosure of factual information on food labels to allow consumers to make informed decisions"; and (4) "Provide consumers with data from which they may make informed decisions for religious reasons." 2014 Vt. Acts & Resolves No. 120, Sec. 2, § 3041(1)-(4).

## II.    Conclusions of Law and Analysis.

The Organizations seek to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), or, in the alternative, request permissive intervention pursuant to Fed. R. Civ. P. 24(b).  Pursuant to Rule 24(a)(2), a court "must permit anyone to intervene" if that party

claims an interest relating to the property or transaction that is the subject
of the action, and is so situated that disposing of the action may as a
practical matter impair or impede the movant's ability to protect its interest,
unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). A party seeking to intervene as of right must "(1) timely file an
application, (2) show an interest in the action, (3) demonstrate that the interest may be
impaired by the disposition of the action, and (4) show that the interest is not protected
adequately by the parties to the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123,
128-29 (2d Cir. 2001) (internal quotation marks omitted). "Failure to satisfy *any one* of
these requirements is a sufficient ground to deny the application." *In re Bank of N.Y.
Derivative Litig.*, 320 F.3d 291, 300 (2d Cir. 2003) (internal quotation marks omitted).

If intervention as of right is not warranted, "[a] district court may grant a motion
for permissive intervention if the application is timely and if the 'applicant's claim or
defense and the main action have a question of law or fact in common.'" *In re Holocaust
Victim Assets Litig.*, 225 F.3d 191, 202 (2d Cir. 2000) (quoting Fed. R. Civ. P. 24(b)(2)).
"The court considers substantially the same factors whether the claim for intervention is
'of right' under Fed. R. Civ. P. 24(a)(2), or 'permissive' under Fed. R. Civ. P. 24(b)(2)."
*R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp.*, 467 F.3d 238, 240 (2d Cir. 2006).

In this case, the Organizations' motion to intervene was filed within two months of
the filing of the Complaint. At the time, Defendants had not responded to the Complaint,
and they claim no prejudice as a result of the timing of the Organizations' motion.
Accordingly, the Organizations' motion to intervene was timely filed. *See United States
v. State of New York*, 820 F.2d 554, 557 (2d Cir. 1987).

To intervene as of right, the Organizations must demonstrate a "direct, substantial,
and legally protectable" interest that would be impaired in the absence of intervention.
*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96-98 (2d Cir.
1990). The Ninth Circuit has concluded that, "for purposes of intervention as of right, a
public interest group that has supported a measure (such as an initiative) has a 'significant
protectable interest' in defending the legality of the measure." *Prete v. Bradbury*, 438

6

F.3d 949, 954 (9th Cir. 2006). The Sixth Circuit, however, has held that a public interest group does not have a separate interest sufficient to intervene in a challenge to the constitutionality of an enacted statute because, in such circumstances, the public's interest is entrusted to the government. *See Northland Family Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 345-46 (6th Cir. 2007) ("[T]he public at large—including public interest groups—has an interest in the procedure by which a given legal requirement is enacted as a matter of democratic legislative process. On the other hand, in a challenge to the constitutionality of an already-enacted statute, as opposed to the process by which it is enacted, the public interest in its enforceability is entrusted for the most part to the government[.]").

This court recently relied on the *Cox* decision to deny a motion to intervene filed by VPIRG and other organizations that had offered testimony in legislative proceedings regarding a nuclear power plant's environmental and economic impacts. *See Entergy Nuclear Vt. Yankee, LLC v. Shumlin*, 2011 WL 2173785, at *2-3 (D. Vt. June 2, 2011). The court determined that the moving organizations' interest was "essentially an interest in the ultimate enforcement of Vermont's statutory and regulatory scheme," and one that, even if "sufficient under Rule 24(a), existing Defendants adequately represent[ed]." *Id.* at *3. However, this court permitted intervention in *Green Mountain Chrysler Plymouth Dodge Jeep v. Torti*, No. 2:05-cv-302 & No. 2:05-cv-304, slip op. at 9-11 (D. Vt. May 3, 2006), concluding that the public interest organizations seeking to intervene had a "direct and substantial interest in the subject" of that case because those organizations had advocated for the adoption of greenhouse gas emission laws and regulations in Vermont and other states. *Id.* at 9-11. In *Torti*, however, the plaintiffs only conditionally opposed intervention and agreed to withdraw that opposition if the parties agreed to the entry of a protective order. *See id.* at 8.

In this case, the Organizations have demonstrated a significant interest in the passage of Act 120 which would be "impaired by the disposition of the action" if Act 120 is held unconstitutional. *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d at 128 (internal quotation marks omitted); *see also Herdman v. Town of Angelica*, 163 F.R.D. 180, 189

7

(W.D.N.Y. 1995) (concluding local organization had an interest in protecting the local environment and preserving property values around the proposed landfill, as well as a direct interest in the validity of a local law it supported prohibiting landfills, that "would unquestionably be impaired by a ruling" that the local law was unconstitutional). It is not clear, however, that they can further establish that they are "necessary" parties to the litigation. *See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006) (noting that, "if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2)"). The court need not resolve that issue because intervention is warranted only if the Organizations can also demonstrate that their interest in this case is not "protected adequately by the parties to the action." *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d at 128-29 (internal quotation marks omitted); *see also H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (directing courts to consider for purposes of permissive intervention several factors that include "the degree to which th[e] interests [of the moving parties] are adequately represented by other parties") (internal quotation marks omitted). Whether there will be adequate representation "must be read . . . in the context of the particular statutory scheme that is the basis for the litigation." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).

Although the burden of showing inadequate representation is generally "treated as minimal," *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978) (internal quotation marks omitted), "[t]he proponent of intervention must make a particularly strong showing of inadequacy in a case where the government is acting as *parens patriae*." *United States v. City of New York*, 198 F.3d 360, 367 (2d Cir. 1999). This is because, "when the State [in its role as a sovereign] is a party to a lawsuit, it is presumed to represent the interests of its citizens." *State of New York*, 820 F.2d at 558.

> [I]n considering a motion to intervene as of right on the side of a government entity in an action in which the government entity is not suing as *parens patriae*, but rather is defending the legality of its actions or the validity of its laws or regulations, courts should examine both (1) whether the government entity has demonstrated the motivation to litigate

8

vigorously and to present all colorable contentions, and (2) the capacity of
that entity to defend its own interests and those of the prospective
intervenor.

*Herdman*, 163 F.R.D. at 190.

Here, the State Defendants' interests in defending the enactment of Act 120 and
the Organizations' advocacy for its passage and their continued support of the Act and
similar GE labeling laws are "so similar" that "adequacy of representation [is] assured."
*Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d at 133; *accord Wash. Elec. Coop., Inc.*, 922
F.2d at 98 (noting that when there is an overlap in "an identity of interest between a
putative intervenor and a party, adequate representation is assured"). Moreover, as some
courts have reasoned, adequate representation can be presumed when an advocacy
organization and the government "share the same ultimate objective in th[e] litigation,
namely, a declaration that the [law supported by the advocacy group] was validly enacted
and is constitutional." *Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39,
43, 45 (E.D.N.Y. 1998) (denying intervention as of right, as well as permissive
intervention because "the nature and extent of the Group's interest in defending the
validity of the [challenged law] is identical to that of the Town and both seek the same
ultimate outcome"); *accord Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D.
93, 103-05 (E.D.N.Y. 1996) (denying intervention as of right because moving
organizations failed to establish their interest in the constitutionality of a state law would
not be adequately represented by the Attorney-General).

The Organizations nonetheless challenge the capacity of the State Defendants to
defend Act 120, arguing that the State Defendants will not adequately defend their
interests because of: (1) the State's financial concerns regarding the cost of defending the
Act; (2) the State's financial and other resource constraints, including human resource
limitations, could lead to different trial strategies and possibly settlement; and (3) the
Organizations have broader interests than the State Defendants, including their advocacy
interests outside the State of Vermont. None of these arguments, however, foreclose a
finding of adequate representation for the following reasons.

9

First, the State Defendants have affirmed that "there can be no question that the State will vigorously defend Act 120 against the claims brought by Plaintiffs," that the State is "fully prepared" to defend the Act, and that it "is not at all prevented from doing so by Plaintiffs' sizable income and resources, general fiscal concerns, or by any lack of qualified personnel at its disposal." (Doc. 21 at 2, 3.) Act 120 itself contains a funding mechanism that permits public and private donations to finance the cost of litigating a challenge to the Act.[1] *See* 2014 Vt. Acts & Resolves No. 120, Sec. 4 & Sec. 7. In addition, the parties represent that the State of Vermont has already raised funding from private donations. In the event the State Defendants' funding proves insufficient, the Organizations may renew their request to intervene on that basis. At present, there is no evidence that the State Defendants lack the incentive, the ability, or the financial resources to defend Act 120.

Second, despite the Organizations' contention that potential fiscal and other constraints on the State Defendants could affect their litigation strategy and "make settlement more appealing for the State," (Doc. 18-1 at 10), "the Second Circuit has held professed differences in trial strategy are insufficient to entitle a party to intervene as of right." *Entergy Nuclear Vt. Yankee, LLC*, 2011 WL 2173785, at \*4 (citing *United States v. Yonkers Bd. of Educ.*, 902 F.2d 213, 218 (2d Cir. 1990) ("If disagreement with an actual party over trial strategy, including over whether to challenge or appeal a court order, were sufficient basis for a proposed intervenor to claim that its interests were not adequately represented, the requirement would be rendered meaningless.")). Indeed, the Second Circuit has directed that, "[s]o long as the party has demonstrated sufficient motivation to litigate vigorously and to present all colorable contentions," as the State

---

[1] Act 120 establishes a "Genetically Engineered Food Labeling Special Fund . . . to pay costs or liabilities incurred by the Attorney General or the State in implementation and administration, including rulemaking, of the requirements under 9 V.S.A. chapter 82A for the labeling of food produced from genetic engineering." 2014 Vt. Acts & Resolves No. 120, Sec. 4(a). In addition to sums appropriated or transferred by the General Assembly, the Fund can include private gifts, bequests, grants, or donations in any amount made to the State from any public or private source. *See* 2014 Vt. Acts & Resolves No. 120, Sec. 4(b). The Act provides that the establishment of this Fund "shall take effect on passage." 2014 Vt. Acts & Resolves No. 120, Sec. 7(b).

10

Defendants have in this case, "[a] putative intervenor does not have an interest not adequately represented by a party to a lawsuit simply because it has a motive to litigate that is different from the motive of an existing party." *Natural Res. Def. Council, Inc. v. N.Y. Dep't of Envtl. Conservation*, 834 F.2d 60, 61-62 (2d Cir. 1987).

Finally, the Organizations argue that their advocacy interests outside the State of Vermont may be impaired and are not adequately represented by the State Defendants. They do not explain, however, how these interests impact the State Defendants' ability to defend the constitutionality of Act 120. Nothing in this lawsuit impairs the Organizations' ability to advocate in other lawsuits in other states with regard to other laws.

Because the State has affirmed its capacity and motivation to vigorously defend Act 120 and because the Organizations have failed to demonstrate that their interests in this action will not be adequately protected by the State Defendants, the court DENIES the Organizations' motion for intervention as of right and DENIES their motion for permissive intervention as well.[2]

In seeking to intervene, the Organizations represent to the court that they intend to "add to, rather than duplicate, the State's defense" and "to coordinate with the State to avoid unnecessary duplication" of issues, including a "focus on different areas of legal analysis than the State" and presentation of additional evidence. (Doc. 18-1 at 13-14.) On certain issues, additional briefing by the Organizations may prove helpful to the court. Because Plaintiffs do not oppose the Organizations' participation as *amici curiae* and because the State Defendants consent to allowing the Organizations "to offer briefing on

---

[2] Permissive intervention is a "discretionary" decision of the district court based on an assessment of, *inter alia*, "the degree to which th[e] interests [of the moving parties] are adequately represented by other parties." *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 797 F.2d 85, 89 (2d Cir. 1986) (internal quotation marks omitted). Because the State of Vermont is "ready, willing and able to vigorously defend the validity of [Act 120] so that the [Organizations'] interests are adequately represented," the Organizations have not demonstrated that are entitled to intervene pursuant to Rule 24(b). *See Great Atl. & Pac. Tea Co. v. Town of E. Hampton*, 178 F.R.D. 39, 45-46 (E.D.N.Y. 1998) (denying motion for permissive intervention because the State in defending the challenged law adequately represented the interests of the organization that had advocated for that law).

all motions, responses, replies and other filings by the parties," (Doc. 21 at 3), the court ORDERS that, during the pendency of this case, the Organizations are permitted to file memoranda as *amici curiae* without seeking further permission for each such filing. The Organizations, however, must comply with the briefing schedule established by the parties and the court.

## CONCLUSION

For the foregoing reasons, the court DENIES the Organizations' motion to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2), and for permissive intervention, pursuant to Fed. R. Civ. P. 24(b).  (Doc. 18.)  The Organizations, however, may submit memoranda as *amici curiae*.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 7th day of October, 2014.

Christina Reiss, Chief Judge
United States District Court

12